(1). ALISHA LUCERO (*In Pro Per*)
423 E. 7TH STREET #5
LOS ANGELES, CA 90014
ALISHALUCERO1@GMAIL.COM
(347) 599-4110
(2). DONAT RICKETTS (*In Pro Per*)
423 E. 7TH STREET #515
LOS ANGELES, CA 90014
DONAT.ASHFORD@GMAIL.COM
(424) 207-4665
(3). VIRTNAND MULLEN (*In Pro Per*)
423 E. 7TH STREET #538
LOS ANGELES, CA 90014
(310) 403-2596

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

ALISHA LUCERO, DONAT
RICKETTS, VIRTNAND MULLEN,
DOES 1 TO 10

PLAINTIFF

vs.

THE MADISON HOTEL, AIDS
HEALTHCARE FOUNDATION,
DEFENDANT(s)

**COMPLAINT FOR VIOLATION OF
THE FAIR HOUSING AMENDMENTS
ACT/STATE LAW PURSUANT TO 42
U.S. Code §12101, U.S. CODE §3604, U.S.
CODE 18 §1708**

LACV18-9418 -FMU(AFMx)
**[THREE-JUDGE COURTS]**

**TO THE COURT, DEFENDANTS AND THEIR ATTORNEY OF RECORD:**

(¶1) **PLEASE TAKE NOTICE,** that the Aids Healthcare Foundation "sponsors" the Federal
Pro Se Clinic located at the Roybal Federal Building and Courthouse. The Pro Se Clinic refused to help
assist, as it would create a conflict of interest; which is of course an unfair competition[1] to in pro
litigants who have a legitimate case. Cases are usually decided by their merits, therefore if this court
finds any small defects that doesn't prejudice either party, we respectfully ask that the assigned judge
consider them an excusable/harmless error. (See ABA, Rule 2.2. *Comment 4.*)

---

[1] Many individuals, with meritorious claims, can't afford an attorney. An organization cannot sponsor a
public support staff, merely seeking to eliminate in Pro Se litigants; this unfair competition can infringe
on a litigant's right to due process and the right to be treated fairly by the courts [Emphasis Added].
(See 48 CFR 1352.209-74 - *Organizational conflict of interest.*)

## I.   JURISIDICTION

This court has jurisdiction over all parties and pursuant to: (1). 42 U.S. Code §12101, (2). 42 U.S.C §3604, U.S. Code 18 §1708. For a better understanding of landlord tenant rights in the State of California, this court may also retain diverse jurisdiction pursuant to CCP §789.3(a) and CCP §1941.1(9).

## II.   VENUE

The Western United States District Court is the most appropriate district for this matter because: This court has jurisdiction over all parties and pursuant to 42 U.S. Code §12101, U.S. CODE §3604, U.S. CODE 18 §1708.

## III.   PARTIES

(1). Plaintiff's name is <u>ALISHA LUCERO</u>. Plaintiff resides at 423 E. 7TH STREET #506 LOS ANGELES, CA 90014.

(2). Plaintiff's name is <u>DONAT RICKETTS</u>. Plaintiff resides at: 423 E. 7TH STREET #515 LOS ANGELES, CA 90014.

(3). Plaintiff's name is <u>VIRTNAND MULLEN</u>. Plaintiff resides at: 423 E. 7TH STREET #538 LOS ANGELES, CA 90014.

(4). Defendant THE MADISON HOTEL is the property in which Plaintiff lives. This property is owned by AIDS HEALTHCARE FOUNDATION.

(5). Defendant AIDS HEALTHCARE FOUNDATION is a non-profit organization. Defendant's main located is 6255 W. SUNSET BLVD, 21ST FLOOR, LOS ANGELES, CA 90028.

## IV.   STATEMENT OF FACTS

(¶2) Aids Healthcare Foundation purchased the Madison Hotel located at 423 E. 7th Street, Los Angeles, CA 90014 sometime in October of 2017. The previous owner left Aids Healthcare Foundation with rental contracts, and a significant amount of habitual problems, such as a broken elevator, fungus, mold, bed bugs, roaches and an unreliable electric grid. Aids Healthcare Foundation has spent a significant amount of money on temporary fixes, unlicensed contractors, and security guards, yet the elevator has been boarded on all five floors for the past five months. Plaintiff VIRTNAND MULLEN is wheel chair bound and is practically confined to the fifth floor as it will take 170 steps to get to and

**COMPLAINT FOR VIOLATION OF THE FAIR HOUSING AMENDMENTS ACT AND STATE LAW PURSUANT TO U.S. CODE §3604**

from the fifth floor. Aids Healthcare Foundation has run publicity campaigns to promote the purchasing of the Madison Hotel, however, if any organization knew the facts of such living conditions no governmental program would endorse their "brilliant" idea to become a slumlord.

(¶3) State court judges have: (1). activity co-conspired, (2). received Ex-Parte communication from Defendant's attorney(s), (3). maneuvered around our right to a Trial by Jury (See L.R. 38-4 *Exceptions*.), and (4). issued final judgements in favor of defendant despite the merits or the material facts of tenant's defenses; which of course is consider extrinsic fraud. (See Rule 60(d)(3). *Relief from a Judgement or Order*, FRCP.)

(¶4) Please note, that back in April 2018, when Aids Healthcare Foundation hired new management a woman named WINTER came, took all documentation and tenants have been refused a copy of their lease agreement.

## V.   CAUSE OF ACTIONS
### 1.   VIOLATION OF THE FAIR HOUSING ACT
(As to defendant's THE MADISON HOTEL, AIDS HEALTHCARE FOUNDATION)
EXHIBITS:  2A-2N

(¶5) The Fair Housing Amendments Act (FHAA) requires a landlord renting a building built after March 13, 1991 with four or more units and at least one elevator to provide reasonable accommodations and modifications. (See 42 U.S.C §3604.)

(¶6) FHAA defines discrimination as "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling." 42 U.S. Code §3604(f)(3)(B). It "imposes an affirmative duty on landlords to reasonably accommodate the needs of "persons with disabilities only with regard to physical accommodations but also with regard to the administrative policies governing rentals. (See *United States v. California Mobile Home Park Mgmt. Co.*, 29 F.3d 1413, 1416 (9th Cir. 1994). In this case the accommodation denied by the landlord plays a significant role in the necessity for more that 100 disabled tenants living at the Madison Hotel. When a landlord boards an elevator for more than five months he/she willfully refuses to fix the property; thus, making him a slumlord. (See *United States v. California Mobile Home Park Mgmt. Co.*, 107 F.3d 1374, 1380 (9th Cir. 1997). The FHAA definition of disability is the same as under the ADA. 42 U.S. Code 3602(h)(1). Infection with

HIV also qualifies as a disability under the FHAA. 24 C.F.R. 100.201(a)(2); *Bragdon v. Abbott*, 524 U.S. 624, 639-642 (1998).

(¶7) An elevator modification is considered necessary accommodation; (Landlord should not have allowed a quadriplegic who lives in second story apartment to crawl and drag his hips up and down filthy concrete stairs when elevator repairs were needed. (See *Davis v. Lane Management, LLC*, 524 F. Supp. 2d 1375 (S.D. Fla 2007). Even under California Law, The Federal Employment Housing Act enables a tenant with a disability to request reasonable accommodation so that person can use and enjoy housing in a way that is equal to a person without a disability. (See generally Cal. Gov't. Code 12927.) Where a request for accommodation is made, housing providers' "rules, policies, practices, or services" must be bent, altered, or waived when necessary to accommodate a person with a disability. Id. At 12927(c)(1).

## 2. **THEFT OR RECEIPT OF STOLEN MAIL**
(As to Defendant THE MADISON HOTEL)
EXHIBITS: _____ 3 0 _____

(¶8) Under U.S. Code 18 §1708, mil theft is defined as taking any piece of mail that is not your own for any purpose. A piece of mail can be a letter, postal card, package, box or bag. If someone steals mail, they could face a serious punishment.

(¶9) Regarding the Fair Housing Amendment Act, California State law has adopted Civil Code §1941.1(9). By law, a dwelling is untenantable if a residential hotel does not provide each tenant with a locking mail receptacle.

## 3. **RETAILITORY EVICTION**
(As to defendant's THE MADISON HOTEL, AIDS HEALTHCARE FOUNDATION)
EXHIBITS: _____ 1 1 A ~ 1 1 Q _____

(¶10) Aids Healthcare Foundation has vexatiously filed unlawful detainers against tenants who's either: (1). Withheld rent for repair/deduct (See VF-4301. Affirmative Defense for Unhabitual Conditions; questions 5 and 6.), or (2). Complained to a Governmental Agency. In the state of California, both actions are protected, and the landlord may not evict a tenant who's exercised their rights, at least not unit that complaint is properly addressed. (See *Barela v. Superior Court*, 636 P. 2d 582 - Cal: Supreme Court 1981.) In most unlawful detainer actions, tenants have filed Ex-Parte

---

**COMPLAINT FOR VIOLATION OF THE FAIR HOUSING AMENDMENTS ACT AND STATE LAW PURSUANT TO U.S. CODE §3604**

Applications pursuant a Motion to Vacate, tenants complained about habitable conditions and not receiving the Court's Notice of Hearing at all. (See also 28 U.S. Code §1655.) Pursuant to Rule 60(d), FRCP the trial court has denied Jury Trials, a proper examination of evidence and entered judgements that have injured many tenants. (See L.R. 38-4 *Exceptions*.)

(¶11) California law also states, "The litigation privilege applies only to communicative acts and does not privilege tortious courses of conduct. *Buchanan v. Maxfield Enterprises, Inc.*, (App. 2 Dist. 2005) 29 Cal.Rptr.3d 909, 130 Cal.App.4th 418, on remand 2006 WL 4808133.) The fact that a landlord's protected acts may predate the filing of the tenants complaint is not dispositive [*Ulkarim v. Westfield, LLC,* (2014) 227 CA4th 1266, 1275–1276, 175 CR3d 17 (reversing trial court's grant of the landlord's special motion to strike, finding that the tenant's claims were based, not on the service of the notice to quit or the filing of the unlawful detainer, but on the landlord's underlying conduct)[2]. A tenant may bring an independent action against the landlord for both actual and punitive damages for retaliatory eviction, damages may include fraud, malice and oppression [see CC § 1942.5(h), (i); *Aweeka v. Bonds*, (1971) 20 CA3d 278, 281–282, 97 CR 650]. Where privilege is one of mixed fact and law, it is for the jury. *Adams v. Cameron*, (App. 1915) 27 Cal.App. 625, 150 P. 1005, rehearing denied 27 Cal.App. 625, 151 P. 286.

## 4. **FRAUDULENT MISREPRESENTATION** – "Silent Fraud"
(As to defendant's THE MADISON HOTEL, AIDS HEALTHCARE FOUNDATION)
EXHIBITS:  9A – 10P

(¶12) Under California law, the landlord can also be held liable for fraud torts pursuant to the California Civil Jury Instructions (CACI) (2017) Series 1900. A landlord [non-profit organization] cannot receive money, mislead the public/private entities and individuals by inducing the poor into

---

[2] Gravamen is the most pertinent part of the grievance, or of a legal complaint.  In this case, the gravamen is formed by the nonhabitual conditions and violation of Plaintiff's constitutional rights. See *Stacy & Witbeck, Inc. v. City and County of San Francisco*, (App. 1 Dist. 1995) 44 Cal.Rptr.2d 472, 36 Cal.App.4th 1074, modified on denial of rehearing, review denied; (although the privilege protects the application for the writ of execution, it does not extend to the subsequent, noncommunicative acts in levy on the property) *Drum v. Bleau, Fox & Associates*, (2003) 107 Cal.App.4th 1009, 132 Cal.Rpt.2d 602 (*Drum*).

**COMPLAINT FOR VIOLATION OF THE FAIR HOUSING AMENDMENTS ACT AND STATE LAW PURSUANT TO U.S. CODE §3604**

contractual relationships while they allow the property to deteriorate. State law says the landlord is to inform all tenants of fungus/mold, and habitual conditions before signing a contract; no assistance program or donor would've placed a person into such unhabital conditions intentionally. Aids Healthcare Foundation has entities paying a portion of some tenant's rent.

## VI.   **PROOF OF SERVICE**

Given the nature of this complaint, Plaintiff's request that all legal correspondence be submitted pursuant to CCP §1010.06 by email addresses. (1). Plaintiff, Donat Ricketts donat.ashford@gmail.com. (2). Plaintiff, Alisha Lucero alishalucero1@gmail.com, and (3). Plaintiff, Virtnard Mullen has a severe physical and mental disability, he's consented that Donat Ricketts should receiver correspondence on his behalf while the tenants search for an attorney. (See 28 U.S. Code § 1655 - *Absent Defendants*.)

**COMPLAINT FOR VIOLATION OF THE FAIR HOUSING AMENDMENTS ACT AND STATE LAW PURSUANT TO U.S. CODE §3604**

## VII.   DEMAND FOR JURY TRIAL

Plaintiffs hereby requests a jury trial on all cause of actions raised in this complaint. (See Rule 83(b)(2) – Right to a Jury Trial, FRCP.)

## VIII.   CONCLUSION

Based on the forgoing, each Plaintiff (150 tenants) is entitled to be rewarded an amount of $50,000.00.

*I declare under the penalty of perjury, in the United States and the State of California that the foregoing is true, correct and made to the best of my factual and legal acknowledgement.*

Date: 11/03/2018

Print: Alisha LUCERO

Signed: Alisha Lucero

ALISHA LUCERO, Plaintiff, *In Pro Per*

All RIGHTS RESERVED

Date: 11/3/2018

Print: Donat Ricketts

Signed:

DONAT RICKETTS, Plaintiff, *In Pro Per*

Date: 11-3-1 ℓ

Print: VIRTNAND MULLEN

Signed: Virt Mue

VIRTNAND MULLEN, Plaintiff, *In Pro Per*

---

7

**COMPLAINT FOR VIOLATION OF THE FAIR HOUSING AMENDMENTS ACT AND STATE LAW PURSUANT TO U.S. CODE §3604**

# EXHIBIT

8A - 8N

~~1A   1N~~



Exhibit BB





Exhibit 8D

CCP 1941.3 / 1941.1(a)





SCEP CODE COMPLIA.. JE
INSPECTION PROGRAM

NG • COMMUNITY
stment Department



Los Ange  ; Housing and Comm
Investment Department
**CODE ENFORCEMENT DIVISION**

Exhibit 8E

| | | | | A.P.N. 5148024027 | | C.D. 14 |
|---|---|---|---|---|---|---|
| ddress: | 423 E. 7TH ST. | | | C.T 206300 | | #Units 222 |
| tion: | | | | In addition notify: | | |
| ar: | AIDS HEALTHCARE FOUNDATION | | | Attention: | STATEWIDE ENTERPRISES | |
| ess: | 6255 W. SUNSET BLVD., 21st FLOOR | | | Address: | 4311 WILSHIRE BLVD, SUITE 600 | |
| & State: | LOS ANGELES, CA | Zip Code: | 90028 | City & State: | LA, CA | Zip Code: 90010 |

## ORDER TO STOP WORK
## (Work performed without required permit(s))

p work as of 2:10 a.m./p.m., JUNE 14, 2018 at the above indicated job address.
u are in violation of the Code Sections 91.103.1, 91.106.1.1 and 161.503 of the Los Angeles
nicipal Code (L.A.M.C.). Submit plans, if required, to the Los Angeles Department of Building and Safety
the work being performed, and/or obtain all the required permit(s) and inspection approvals from
e Los Angeles Department of Building and Safety for the alterations /repair /additions described
rein: PERMIT REQUIRED FOR NEW PLUMBING + ELECTRICAL WORK
T ALL FLOORS. NEW SHOWER STALL INSTALLATIONS (FLOORS 1-5)
OBTAIN PERMITS FROM THE DEPT OF BUILDING + SAFETY
ermits and inspections approvals cannot be obtained, remove all unpermitted work done and restore the
lding to its approved condition/use as reflected on the Department of Building and Safety records. Failure
comply with this order is a violation of Code Sections 91.103.3 and 91.104.2.4 of the L.A.M.C.

$400 Administrative Investigation Fee is due and payable to the Los Angeles Housing and Community
estment Department (HCIDLA) for work commenced without having first obtained the required permits.
ction 161.902 of the Los Angeles Municipal Code. (L.A.M.C.).

this location is subject to the Cultural Heritage Commission requirements, or within a Historical
servation Overlay Zone, you are required to obtain a Certificate of Appropriateness from the Department
City Planning prior to the commencement of any construction work. Section 11.00(M) and 12.20.3(F)1 of
Los Angeles Planning and Zoning Code, and Section 91.106.4.5 of the Los Angeles Municipal Code.

| SPECTOR'S NAME: (PRINT) | | INSPECTOR'S SIGNATURE: | |
|---|---|---|---|
| OBERT PALMERIN | | | |
| SPECTOR'S PHONE #: | INSPECTOR'S OFFICE LOCATION: | | |
| 3-252-2872 | 3350 WILSHIRE BLVD, SUITE 1500 LOS ANGELES, CA 90010 | SURVEY DATE: 06-14-18 | |

NY FAILURE TO COMPLY WITH THIS ORDER WILL RESULT IN FURTHER ENFORCEMENT ACTIONS. YOU
AY BE ASSESSED FOR INVESTIGATIVE OR ENFORCEMENT COSTS ASSOCIATED WITH ANY ORDERS
EQUIRING THE NEED FOR ANY FURTHER INSPECTION AND/OR ADMINISTRATIVE ACTIONS. FAILURE TO
AY ANY COSTS MAY RESULT IN THE IMPOSITION OF A LIEN AGAINST THE SUBJECT PROPERTY.
v. 8/13

Exhibit 8 F



Exhibit 8G

CCP 784.3(c)



Exhibit 8H



(CP 789.3(a)





Exhibit 8I

OUR Bathrooms



Asbesto Fibers

Exhibit J



Asbesto Fibers

Exhibit 8K







Exhibit M



Exhibit 8 N



# EXHIBIT 9



Exhibit 9A

## HEALTHY HOUSING FOUNDAION REFERRAL / APPLICATION PROCESS
*Healthy Housing Foundation is accepting applications for permanent & transitional housing.*

| | | |
|---|---|---|
| **Housing Type** | Permanent/Single Room Occupancy (SRO)<br>**Madison Hotel**<br>423 E. 7th Street<br>Los Angeles, CA 90014 | Transitional/Up to 90 Days (families)<br>**Sunset Property**<br>6516 Sunset Blvd.<br>Los Angeles, CA 90028 |
| **Eligible Applicants** | Adults who are homeless or at risk homeless & other displaced individuals & families;<br>No smoking/No sex offenders/ No acts of violent assault/No drug trafficking;<br>No pets. (Properly documented service/support animals permitted if they are a reasonable accommodation for a disability.) | |
| **Referral Process** | *Referral Process:*<br>1. Referring agency complete Healthy Housing Foundation's application and background check forms with client<br>2. Applicant can deliver forms:<br>In person to:<br>Madison Hotel 423 E. 7th Street,<br>Los Angeles, CA 90014<br>**OR**<br>FAX RENTAL APPLICATION & BACKGROUND AUTHORIZATION<br>TO: +1-323-978-6030 | |
| **Site Manager Contact** | Michael Zubia Cell: (213) 988.7003        Email: Michael.Zubia@aidshealth.org | |
| **Languages Spoken** | English/Spanish | |
| **Hours of Operation** | Applications are accepted via fax and on site 24/7. | |
| **Location Services** | On-site property management; washer/dryer; cable/WIFI | |
| **Rental Category** | Income Base: $400 per month for the Madison Hotel, $500 per month for the Sunset Property. | |
| **Fees** | $100 Security deposit | |
| **Accepted Income Sources** | Income verification by **ONE** of the following methods:<br><br>✓ 2017 HUD Income Limits for Very Low-Income Households<br>✓ 30%AMI (HUD) – attached income limits<br>✓ SSI/SSDI -Award letter dated within the last 12 months<br>✓ GR Awards letter 3 months of net of spending transactions<br>✓ Bank statements for the last three months (if verifiable)<br>✓ Signed affidavit form stating applicant receives the minimum required monthly income. | |
| **Required Documentation Checklist** | In order to be processed, your complete application should contain ALL of the following:<br><br>1. Complete Application Form<br>2. Proof of Income<br>3. Background Check Form<br>4. Verifiable photos Identification Card including:  State ID, Passport, Driver's License, Native Tribal ID, and US Department of Defense ID. | |

For any questions regarding the process or required documentation, please email:

Jacqueline Burbank
**Jacqueline.Burbank@aidshealth.org**

Exhibit 9B

## mickey manager ▼
+12132844049

CALL   MORE

thank you sir
6:05 PM

 No problem!
Sink is working great though
6:15 PM

6:16 PM  it is thanks. x

Tuesday, April 17, 2018

Hey I just got back. where's the fridge?
4:11 PM

 I got called out to another building today, and i didn't want anyone in there without me being in there.
Can we do it Thursday i have meetings all day tmrw
4:14 PM

4:15 PM  yeah

 Thank u sir
4:15 PM

k

Enter message

Exhibit 9C

## mickey manager ▼
+12132844049

CALL    MORE

thank you sir
6:05 PM



No problem!
Sink is working great though
6:15 PM

it is thanks. x
6:16 PM

Tuesday, April 17, 2018

Hey I just got back. where's the fridge?
4:11 PM



I got called out to another building today, and i didn't want anyone in there without me being in there.
Can we do it Thursday i have meetings all day tmrw
4:14 PM

yeah
4:15 PM



Thank u sir
4:15 PM

k

 Enter message  

 

← **mickey manager** ▼
+12132844049

CALL   *Exhibit 9D*   MORE



I'll check the cameras and ask then                8:27 AM

Thursday, April 19, 2018

2:32 PM   you getting on my nerves. where the hell is my fridge?

Friday, May 4, 2018

I want you to know that i have nothing personal against you. The 'way' I assert my tenant rights is protected under the California Constitution. Furthermore, I gave you significant amount of time and numerous warnings not to make me  your adversary. Because you are a nice person it took alot for me to make an affirmative decision to report you and sue. However, I can't put you before my own well being. Lastly, your attorney can't beat me, and it will be a jury trial

4:47 PM

 Enter message   

 

← **mickey manager** ▼    CALL    Exhibit 9E MORE
  +12132844049



I'll check the cameras and
ask then
                                    8:27 AM

**Thursday, April 19, 2018**

           you getting on my nerves.
  2:32 PM  where the hell is my fridge?

**Friday, May 4, 2018**

           I want you to know that i have
           nothing personal against you.
           The 'way' I assert my tenant
           rights is protected under
           the California Constitution.
           Furthermore, I gave you sig-
           nificant amount of time and
           numerous warnings not to
           make me  your adversary. Be-
           cause you are a nice person
           it took alot for me to make an
           affirmative decision to report
           you and sue. However, I can't
           put you before my own well
           being. Lastly, your attorney
           can't beat me, and it will be a
  4:47 PM jury trial

 Enter message    





# mickey manager ▼

← +12132844049

Exhibit 9F

CALL    MORE

Tuesday, April 3, 2018

come look in my apartment, you will not find the kitchen or water

5:51 PM

Wednesday, April 4, 2018

thanks for being compassionate, hope things get better. would suck if u quit. let me know if there's anything I can do to help or convince u to stay

5:53 PM

Monday, April 9, 2018

paper is now on your desk. good night

9:33 PM

 Okay thank you.  9:50 PM

Tuesday, April 10, 2018

how long will it take to install the kitchen? Are u doing it?

7:25 PM

 Enter message 


Exhibit 9G

### mickey manager ▼
+12132844049

CALL    MORE

Tuesday, April 3, 2018

> come look in my apartment, you will not find the kitchen or water
>
> 5:51 PM

Wednesday, April 4, 2018

> thanks for being compassionate, hope things get better. would suck if u quit. let me know if there's anything I can do to help or convince u to stay
>
> 5:53 PM

Monday, April 9, 2018

> paper is now on your desk. good night
>
> 9:33 PM

 Okay thank you.    9:50 PM

Tuesday, April 10, 2018

> how long will it take to install the kitchen? Are u doing it?
>
> 7:25 PM

 Enter message     



## mickey manager ▼
+12132844049

CALL   MORE

Exhibit 9H

Wednesday, April 18, 2018

> Man, wtf are your workers trying to open my door for no legitimate reason? This is the 3rd time it's happened.

8:09 AM

 When?

8:22 AM

> 10 mins. ago then he acted like he doesn't speak English, same thing happened with another guy few weeks back. Not sure if u took a glimpse at my emails u printed but I've had ALL my shit stolen before and it's why I'm in this situation.

8:24 AM

 I'll go up to talk to them now, but I'm sure no one was trying to go in ur room they prob just bumped the door with tools or something.

8:26 AM

Not true!

 Enter message      

 

Exhibit 9I

# mickey manager ▼
+12132844049

CALL    MORE

← 

Wednesday, April 18, 2018

> Man, wtf are your workers trying to open my door for no legitimate reason? This is the 3rd time it's happened.

8:09 AM



When? 

8:22 AM

> 10 mins. ago then he acted like he doesn't speak English, same thing happened with another guy few weeks back. Not sure if u took a glimpse at my emails u printed but I've had ALL my shit stolen before and it's why I'm in this situation.

8:24 AM



I'll go up to talk to them now, but I'm sure no one was trying to go in ur room they prob just bumped the door with tools or something.

8:26 AM

> Not true!

 Enter message   

Exhibit 9J



# mickey manager ▼
+12132844049

CALL    MORE

Tuesday, April 10, 2018

> how long will it take to install the kitchen? Are u doing it?
>
> 7:25 PM

Wednesday, April 11, 2018

 It will take about a hour, No the contactors but i stay in the room
9:47 AM

> 11:59 AM    thanks bro

 No problem, thank you for being reasonable
12:00 PM

> well you can be more reason too.
>
> 12:12 PM

> Think you could get me a small fridge and just fix the sink?
>
> 6:22 PM

 Let me check in if can do that I'll buy u a fridge tmrw cool?
6:27 PM

 Enter message      

 

## mickey manager ▼
+12132844049

CALL    MORE

*Exhibit 9K*

Tuesday, April 10, 2018

> **how long will it take to install the kitchen? Are u doing it?**
> 7:25 PM

Wednesday, April 11, 2018


> **It will take about a hour, No the contactors but i stay in the room**
> 9:47 AM

> **thanks bro**
> 11:59 AM


> **No problem, thank you for being reasonable**
> 12:00 PM

> **well you can be more reason too.**
> 12:12 PM

> **Think you could get me a small fridge and just fix the sink?**
> 6:22 PM


> **Let me check in if can do that I'll buy u a fridge tmrw cool?**
> 6:27 PM

  Enter message   

Exhibit 9L

← **mickey manager** ▼
+12132844049

CALL   MORE

 I'll go up to talk to them now, but I'm sure no one was trying to go in ur room they prob just bumped the door with tools or something.
8:26 AM

8:27 AM   Not true!

 I'll check the cameras and ask then
8:27 AM

**Thursday, April 19, 2018**

2:32 PM   you getting on my nerves. where the hell is my fridge?

**Friday, April 20, 2018**

2:26 PM   would  you print something for me? it's 4 pages

**Friday, May 4, 2018**

I want you to know that i have nothing personal against you. The 'way' I assert my tenant

📎 Enter message            ☺

Exhibit 9M

 **mickey manager** ▼
+12132844049

←     CALL    MORE

I'll go up to talk to them now, but I'm sure no one was trying to go in ur room they prob just bumped the door with tools or something.
8:26 AM

8:27 AM   Not true!

 I'll check the cameras and ask then
8:27 AM

Thursday, April 19, 2018

you getting on my nerves. where the hell is my fridge?
2:32 PM

Friday, April 20, 2018

would you print something for me? it's 4 pages
2:26 PM

Friday, May 4, 2018

I want you to know that i have nothing personal against you. The 'way' I assert my tenant

 Enter message     

Exhibit 9 N

### mickey manager ▼
+12132844049

CALL    MORE

Monday, April 16, 2018

hey b. I'm going to do some cleaning, shower and be out around 1130 so you can do what you need to do

10:12 AM

 I didn't post a notice. If it's okay with you for me to go in today still?

10:13 AM

10:31 AM    yes. im expecting

11:01 AM    and don't forget the sink

11:43 AM    let me know when it's done

 Yes sir   11:44 AM

 About to head in your unit okay sir

2:06 PM

2:10 PM    thanks b

 Enter message   

Exhibit 90

← **mickey manager** ▼
+12132844049

CALL    MORE

Monday, April 16, 2018

hey b. I'm going to do some cleaning, shower and be out around 1130 so you can do what you need to do

10:12 AM

 I didn't post a notice. If it's okay with you for me to go in today still?

10:13 AM

10:31 AM    yes. im expecting

11:01 AM    and don't forget the sink

11:43 AM    let me know when it's done

 Yes sir   11:44 AM

 About to head in your unit okay sir

2:06 PM

2:10 PM    thanks b

 Enter message     

Exhibit 9P

 **mickey manager** ▼
+12132844049

CALL   MORE

thanks b   2:10 PM



Sink is fixed

Plz no food down the sink that clogged it.

I got u a key already   2:46 PM

That sink was clogged the day I moved in. I didn't put food down it. if you are referring to the grapefruit skin that's not what clogged it, that's from my hand when I tried washing them. I'll be back in like 2 hours   2:49 PM

is the fridge there too?

2:52 PM



I left a key in ur mailbox so ask front desk for it. Fridge will be put tmrw i will give u a notice   6:03 PM

 Enter message      


Exhibit 9Q

## mickey manager ▼
← **+12132844049**

CALL    MORE



thanks b
2:10 PM



Sink is fixed

Plz no food down the sink that clogged it.

I got u a key already
2:46 PM

That sink was clogged the day I moved in. I didn't put food down it. if you are referring to the grapefruit skin that's not what clogged it, that's from my hand when I tried washing them. I'll be back in like 2 hours
2:49 PM

is the fridge there too?
2:52 PM



I left a key in ur mailbox so ask front desk for it.
Fridge will be put tmrw i will give u a notice
6:03 PM

 Enter message    



mickey manager ▼
+12132844049

CALL    MORE



Let me check in if can do that
I'll buy u a fridge tmrw cool?          6:27 PM

6:28 PM    sounds good.

Sorry if it seems im
demanding. I'm really a chill
person, just under pressure
6:29 PM    right now.

Friday, April 13, 2018



Michael.zubia@aidshealth.or
g
11:19 AM

3:44 PM    I sent that email

Monday, April 16, 2018

hey b. I'm going to do some
cleaning, shower and be out
around 1130 so you can do
10:12 AM    what you need to do



I didn't post a notice. If it's

 Enter message        


Exhibit 9S

← **mickey manager** ▼
+12132844049

CALL   MORE


Let me check in if can do that
I'll buy u a fridge tmrw cool?   6:27 PM

6:28 PM   sounds good.

Sorry if it seems im
demanding. I'm really a chill
person, just under pressure
right now.
6:29 PM

Friday, April 13, 2018


Michael.zubia@aidshealth.or
g
11:19 AM

I sent that email
3:44 PM

Monday, April 16, 2018

hey b. I'm going to do some
cleaning, shower and be out
around 1130 so you can do
what you need to do
10:12 AM


I didn't post a notice. If it's

 Enter message   



# mickey manager ▼
+12132844049

CALL   MORE   Exhibit 9T

Monday, April 2, 2018

I have paperwork and stuff on the floor in my unit. Please ask them not to damage/ touch it

10:19 AM

 You got it  10:28 AM

 Hey sorry to bug, we tried to put the kitchen in ur unit but the pipe is all messed up, that's the reason y the water isn't running good. We are getting all the parts we need now so tmrw a.m we will fix it and install the Kitchenet

Sorry for the delay  3:07 PM

3:07 PM   thanks mickey

Tuesday, April 3, 2018

come look in my apartment

 Enter message    



Exhibit 9 U

← **mickey manager** ▼
+12132844049

CALL   MORE

Monday, April 2, 2018

> I have paperwork and stuff on the floor in my unit. Please ask them not to damage/ touch it
>
> 10:19 AM

 You got it   10:28 AM

 Hey sorry to bug, we tried to put the kitchen in ur unit but the pipe is all messed up, that's the reason y the water isn't running good. We are getting all the parts we need now so tmrw a.m we will fix it and install the Kitchenet

Sorry for the delay   3:07 PM

> 3:07 PM   thanks mickey

Tuesday, April 3, 2018

come look in my apartment

 🖇 Enter message    ☺  

8/31/2018                                    Gmail - Truce: Civil Litigation

                                                                    Exhibit 9V

 **Gmail**                                    Shawn Turner <donat.ashford@gmail.com>

## Truce: Civil Litigation
1 message

**Shawn Turner** <donat.ashford@gmail.com>                    Wed, May 16, 2018 at 5:51 PM
To: Michael Zubia <Michael.Zubia@aidshealth.org>, Ged Kenslea <Ged.Kenslea@aidshealth.org>, Ged Kenslea
<gedk@aidshealth.org>, Jacqueline Burbank <Jacqueline.Burbank@aidshealth.org>

Per our conversation:

It's not my intention to sue the AHF, Healthy Housing Foundation or the Madison Hotel. You guys have helped me in a
desperate time. So, such action can back fire at some point and I don't need the bad karma.

Nevertheless, accord to complaints I hear daily, the Madison Hotel is a notorious tort feasor and you guys bought the
property with an implied 'eyes open' contractual policy. Not to mention you are activitely leasing.

My 'reaction(s)' we're merely the strong assertion of constitutional rights as I'm on a fixed income, had 2 boxes of food go
to waste and can't afford to constantly eat out. I want the appliances that I was told I'd get and are required by law. I also
would like the next 6 months off rent to recover from previous matters (see case no. BC705085 and case no.
18TLC06928). In a nutshell, I'm currently distressed and living here has added to it in a somewhat unrelated way.

I also would like a freelance gig with the AHF/ Healthy Housing Foundation so that I'm more productive with my
time/energy instead of dealing with so much civil litigation.

Because I'm not asking for 'money' I think my request are reasonable and I can provide you with my resume for actual
proof of intelligence and work history.

Upon a mutual agreement i'm Willing to sign a Non-disclosure that I will not consult with past/current tenants regarding
civil rights nor will i influence civil litigation directly/indirectly. Because of previous conversation(s) if I'm every called as a
witness regarding any matters I'd plead the 5th.

Because NO ONE got back to me about my intitial complaint sent on 4/9 I'd automatically assume that if i don't hear
anything back regarding this email that you intend on pursuing legal matters... Again, it's not my intention to be tied in
litigation with AHF... I simple want to pursue my inalienable right as best as possible.

Let me know.

Sorry about typos. Speed typing from iPhone.

--

*Shawn Turner*

Failure is not an option

Actor|Digital Marketer|Producer|Activist
donat.ashford@gmail.com
(818) 601-3640
Facebook | Twitter | YouTube | Linkedin | Instagram

**CONFIDENTIAL PRIVILEGED INFORMATION:** This message is from Shawn Turner, LLC. It may contain confidential
and/or legally protected information and is intended only for the intended recipient(s). If you are not an intended recipient,
please disregard, destroy, and delete this e-mail in all formats. If you have received this e-mail by mistake, please reply to
the sender immediately so that I can remedy the problem. Thank you for your cooperation.

Exhibit 9W

# M Gmail

Shawn Turner <donat.ashford@gmail.com>

---

## Notice of Entry Section 1954
3 messages

---

**Shawn Turner** <donat.ashford@gmail.com>                          Tue, Jun 12, 2018 at 5:39 PM
To: Madisonhotelapts@gmail.com, Costumerservice@statewideenterprises.com, Michael Zubia
<Michael.Zubia@aidshealth.org>

My name is Donat Ricketts and I live at 423 E. 7th Street #515 Los Angeles, CA 90012.

This email is in regards to a 24-hour Notice To Enter Dwelling for an inspection under ccp 1954. The notice isn't specific
and I do not consent to a "routine" inspection as there is no actual emergency.

I do not consent to an unneccasary intrusion pending civil litigation, that's unless you are in compliance to section 1954(a)
(2). Which will also be in compliance with section 789.3 and #1 on your document.

In the instance that I have a civil suit pending against the property I don't consent to an unnecessary intrusion and WE
DONT LIKE HOW NEW MANGEMENT IS TREATING THIS PLACE LIKE A PRISON. You should invest in needed
repairs so that this building is up to standard opposed to hiring aggressive dicks. Nonetheless, two authorized Agents
(Miguel and Blake) where personally served with a copy of the civil suit and summons, which was also mailed to AHF. In
this very moment I have legal grounds to fil à default judgement against the property. However, in the instance that this
building has yet again under went new management an amended complaint will name additional does and will be mailed
to them.

So if you wanna fight this is how this is going to go. You will make the reasonable accommodations or:

1. You will try to file a retailitory eviction action that will be defeated on demurrer and you will have to pay a $2,000.00
penalty under 1940.2(b).

2. Or you will just do things to annoy me and I will amend my complaint a third time for a class action lawsuit for millions...
That's after I call the Health department to inspect this building...

--

*Shawn Turner*

Failure is not an option

Actor|Digital Marketer|Producer|Activist
donat.ashford@gmail.com
(818) 601-3640
Facebook | Twitter | YouTube | Linkedin | Instagram

**CONFIDENTIAL PRIVILEGED INFORMATION:** This message is from Shawn Turner, LLC.  It may contain confidential
and/or legally protected information and is intended only for the intended recipient(s).  If you are not an intended recipient,
please disregard, destroy, and delete this e-mail in all formats.  If you have received this e-mail by mistake, please reply to
the sender immediately so that I can remedy the problem.  Thank you for your cooperation.

---

**Mail Delivery Subsystem** <mailer-daemon@googlemail.com>                  Tue, Jun 12, 2018 at 5:39 PM
To: donat.ashford@gmail.com

Exhibit GX

 Gmail

**Shawn Turner <donat.ashford@gmail.com>**

---

## Cease/Desist Notification
1 message

---

**Shawn Turner <donat.ashford@gmail.com>**                                  Thu, Aug 2, 2018 at 10:01 AM
To: "Madisonhotelapts@gmail.com" <Madisonhotelapts@gmail.com>, Michael Zubia <Michael.Zubia@aidshealth.org>,
Jacqueline Burbank <Jacqueline.Burbank@aidshealth.org>, Ged Kenslea <Ged.Kenslea@aidshealth.org>, Ged Kenslea
<gedk@aidshealth.org>

I Donat Ricketts live at 423 E. 7th Street #515 Los Angeles, CA 90014. I have complained to this current management and old about Constitutional tenant rights. My complaints to the Health Department, nor tenant meetings have been addressed. You guys attached deceptive notes on each tenant's door alleging contractual repairs to "vacate" units, the bathroom and painting.. However, I'm seeing the same workers who were once told to obtain a valid contractor's license before doing anymore work on this property. I'm seeing more and more roachs in the bathrooms and I still don't have a stove/fridge I was told I'd be getting.

I should warn you in good faith not to pursue any litigation against me; especially not an unlawful detainee actionZ The Madison Hotel is a notorious tortfessor that I just happen to be dealing with right now.

As for the limited claims case... I decided to file a Clerk's entry of judgement for dismissal WITHOUT PREJUDICE in good faith and also because I spent more than 50 hours perfecting a Motion for Motion for Summary Judgement against my formal landlord.

In other words, I am more than happy to discuss arrangements with the Hotel to be in compliance with local tenant ordinacies. In the mean time I'm merely using a "repair-deduct" method while you guys breached a contract in fair dealings from the start and this new management doesn't seem to want to comply with my rights. And there will be no lawyer mumble jumble trying to dismiss my material facts.

Here's a few pics of what I was working on and a small part as to why I decided to not deal with your attorney in court. I simply have a much bigger claim with a slew of substantial evidence to bargain....

--

*Shawn Turner*

Failure is not an option

Actor|Digital Marketer|Producer|Activist
donat.ashford@gmail.com
(818) 601-3640
Facebook | Twitter | YouTube | Linkedin | Instagram

**CONFIDENTIAL PRIVILEGED INFORMATION:** This message is from Shawn Turner, LLC. It may contain confidential and/or legally protected information and is intended only for the intended recipient(s). If you are not an intended recipient, please disregard, destroy, and delete this e-mail in all formats. If you have received this e-mail by mistake, please reply to the sender immediately so that I can remedy the problem. Thank you for your cooperation.

---

**3 attachments**

**0FEC02EA-7BA8-41ED-9B01-C4FA219C9747.jpeg**
2583K

 Gmail

Shawn Turner <donat.ashford@gmail.com>

Exhibit 9y

## Cease/ADDITIONAL Desist

1 message

**Shawn Turner** <donat.ashford@gmail.com>                                    Tue, Oct 16, 2018 at 6:30 PM
To: Ged Kenslea <Ged.Kenslea@aidshealth.org>, Ged Kenslea <gedk@aidshealth.org>, Jacqueline Burbank
<Jacqueline.Burbank@aidshealth.org>, Madisonhotelapts@gmail.com

Because the mail boxes are not in our control it's my belief that staff at the Madison has misplaced or trashed legal
correspondence involving case No. 18STUD09220. In a nutshell, my IQ is 157 and there is NOTHING i cant learn or
overcome.

Anyhow, I missed my hearing on October 5th, 2018. Therefore, a defualt judgement was entered against me and im
fighting it. Not sure what your attorney of record has reported, but its my discretion to inform you as to how this case
should go, and how it WILL end.

First, because i filed an action against you in May 2018 you CAN NOT file an eviction action against me until the unlimited
civil case is properly addressed. (See Barcela v. Superior Court (1981).)

Secondly, in this case, the defualt judgment is subject to reversal and IS by LAW considered wholly void pursuant to CCP
657.

Third, i know what's LAW and despite the trial court's decision to act with statutory malice I have been building my record
with Federal Rules of Civil Proceedure and an appeal in mind from the start. Therefore, I will be filing a Writ For
Prohibition with the reviewing court as well as a Motion to Stay at the trial court TOMORROW.

Fourth, because i filed my own action 5 months ago your complaint was filed a month too early as landlord's can not evict
a non-defualting tenant until after 180 days. In order for a tenant to be considered in default the trier of fact must
determine by a preponderance of evidence if the property was considered Habitual during the tenant's tenancy and at the
time the action(s) were filed. ALL of your unlawful detainer actions are subject to the Anti-SLAPP statue and you can not
meet the requirements of the second prong.

Lastly, remind your attorney of ABA, RULE 3-700(c). Termination of Employment.

In other words, because I've warned you, you do not have any legal right to obtain a Writ For Possession and if the
Marshall locks me out you WILL be held liable for fraud, opression and malice; so I reserve the right until August 24th,
2022 to ask for more money and add any additional past/present tenants to my unlimited civil action. Your contract
prohibits either party from claiming more than $500 in attorney fees and if you try to claim more you can be held liable for
an additional tort for actual fruad of contract... You can either settle this matter or find yourself tied in a significant number
of appeals and spending an extrodinary amount on legal fees.

This email is made in good faith, so that you may not obtain a Writ to Possession against myself or anyone that had
provided me a Declaration. Pursuant to section 425.16(e)(2) you may not claim any relief or raise an issue of "intent" in
my case nor any other case.

--

*Shawn Turner*

Failure is not an option

Actor|Digital Marketer|Producer|Activist
donat.ashford@gmail.com
(818) 601-3640
Facebook | Twitter | YouTube | Linkedin | Instagram

**CONFIDENTIAL PRIVILEGED INFORMATION:** This message is from Shawn Turner, LLC.  It may contain confidential
and/or legally protected information and is intended only for the intended recipient(s).  If you are not an intended recipient,

i Silent Fraud

# EXHIBIT  10

please disregard, destroy, and delete this e-mail in all formats. If you have received this e-mail by mistake, please reply to the sender immediately so that I can remedy the problem. Thank you for your cooperation.

---------- Forwarded message ----------
From: **Jacqueline Burbank** <Jacqueline.Burbank@aidshealth.org>
Date: Fri, Mar 2, 2018 at 1:06 PM
Subject: Re: Follow up on ....Re: Healthy Housing.
[Quoted text hidden]

*Exhibit   10A*

**2 attachments**

**4th Draft - UPDATED APPLICATION TO RENT.docx**
45K

**3rd Draft - BACKGROUND RELEASE .docx**
60K

---

**Shawn Turner** <donat.ashford@gmail.com>                         Mon, Mar 12, 2018 at 3:21 PM
To: Ged Kenslea <Ged.Kenslea@aidshealth.org>, Jacqueline Burbank <Jacqueline.Burbank@aidshealth.org>

hey thanks for putting me in touch with Micheal. I really appreciate what you are doing by helping me. if I may ask is there any other options other than the Madison? It's not the ideal area I should call home. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[Quoted text hidden]
--

*Shawn Turner*
Failure is not an option

Actor|Digital Marketer|Producer|Activist
donat.ashford@gmail.com
(818) 601-3640
Facebook | Twitter | YouTube | Linkedin | Instagram

**CONFIDENTIAL PRIVILEGED INFORMATION:** This message is from Shawn Turner, LLC. It may contain confidential and/or legally protected information and is intended only for the intended recipient(s). If you are not an intended recipient, please disregard, destroy, and delete this e-mail in all formats. If you have received this e-mail by mistake, please reply to the sender immediately so that I can remedy the problem. Thank you for your cooperation.

---

**Shawn Turner** <donat.ashford@gmail.com>                         Mon, Mar 12, 2018 at 3:22 PM
To: Ged Kenslea <Ged.Kenslea@aidshealth.org>, Jacqueline Burbank <Jacqueline.Burbank@aidshealth.org>

what's going on with the Hollywood location? isn'
that availablr?
[Quoted text hidden]

---

**Jacqueline Burbank** <Jacqueline.Burbank@aidshealth.org>         Mon, Mar 12, 2018 at 11:14 PM
To: Shawn Turner <donat.ashford@gmail.com>, Ged Kenslea <Ged.Kenslea@aidshealth.org>

Hi Shawn,

The hollywood location is for families with children only. Right now we just have the Madison for others.

8/31/2018                                        Gmail - Follow up on ....Re: Healthy Hour

1.25 to wash, 1.00 dry

Get Outlook for iOS                                          *Exhibit 10B*

---

**From:** Shawn Turner <donat.ashford@gmail.com>
**Sent:** Wednesday, March 14, 2018 1:09:42 PM
**To:** Jacqueline Burbank; Michael Zubia

[Quoted text hidden]

[Quoted text hidden]

---

**Shawn Turner** <donat.ashford@gmail.com>                     Wed, Mar 14, 2018 at 1:39 PM
To: Michael Zubia <Michael.Zubia@aidshealth.org>

Ok.

*Shawn Turner*

Failure is not an option

Actor|Digital Marketer|Producer|Activist
donat.ashford@gmail.com
(818) 601-3640
Facebook | Twitter | YouTube | Linkedin | Instagram

**CONFIDENTIAL PRIVILEGED INFORMATION:** This message is from Shawn Turner, LLC. It may contain confidential and/or legally protected information and is intended only for the intended recipient(s). If you are not an intended recipient, please disregard, destroy, and delete this e-mail in all formats. If you have received this e-mail by mistake, please reply to the sender immediately so that I can remedy the problem. Thank you for your cooperation.

[Quoted text hidden]

---

**Shawn Turner** <donat.ashford@gmail.com>                     Wed, Mar 14, 2018 at 1:39 PM
To: Michael Zubia <Michael.Zubia@aidshealth.org>

Also I wanted a room with the stove and small fridge

*okay before I moved in. The promised everyone a stove/fridge, which is the core complaint Plaintiff Rickett has.*

*Shawn Turner*

Failure is not an option

Actor|Digital Marketer|Producer|Activist
donat.ashford@gmail.com
(818) 601-3640
Facebook | Twitter | YouTube | Linkedin | Instagram

*CCP 739.3 ; UF-4301-questions #5 and #6*

**CONFIDENTIAL PRIVILEGED INFORMATION:** This message is from Shawn Turner, LLC. It may contain confidential and/or legally protected information and is intended only for the intended recipient(s). If you are not an intended recipient, please disregard, destroy, and delete this e-mail in all formats. If you have received this e-mail by mistake, please reply to the sender immediately so that I can remedy the problem. Thank you for your cooperation.

[Quoted text hidden]

---

**Michael Zubia** <Michael.Zubia@aidshealth.org>               Wed, Mar 14, 2018 at 2:15 PM

10/25/2018                              Bed Bug Report for Madison Hotel, Los Ange    CA

**EXhibit 10C**

 **The Bedbug Registry**   look up + report   alerts   city maps   resources   about   faq   blog

## Madison Hotel
423 E 7th St
Los Angeles, CA 90014-2311

Found 5 reports:



Marcus on 09/28/2015

Bed bugs and roaches and trash left sitting on the
floor over the weekend at The Madison Hotel.

Anonymous on 02/09/2014

I have lived at the Madison Hotel for 6 years now and
I to had bed bugs and the owner is aware of this
problem I went plenty of nights unable to sleep and
all I was given was a can of spray August 2013 I even
bombed my room and I paid for the bombs I asked to
be 're inverse and like that was going to happen now
the problem is the new owner doesn't want to pay for
license professional to do any work around here at
the Madison and it's against the law to have
employees not on record paying them un



How would Measure W
clean toxic water?

MEASURE W
SAFE CLEAN WATER
MARCH BAR          LEARN MORE

der the table the problem I have now is I haven't had
hot water in 2 months and the building inspector is
aware of the problem in fact the building inspector
hasn't came back yet

show snippet only

Anonymous on 01/23/2013

Moved in room 415, was eaten alive with bed bugs. I
have pictures. Was moved to another room. For
months everything was fine, now my personal bed,
clothes and room is infected with these unwanted bed
bugs.

David, promised to help get these bed bugs under
control. Unknown to me and other residents, David
sold the hotel and left without a word and without
helping to control these bed bugs.

I made a report to the Los Angeles County Health
Department (01-17-2013). Waiting for inspection.

absolutely horrifying on 09/16/2011

The conditions of this establishment are absolutely
horrifying. My heart goes out to the long-term
residents; many of which are elderly seniors or
disabled. Many of them receive SSI or SSA
assistance; which took yet another benefit cut
recently. This makes affording legal representation
virtually impossible. From bedbugs to the deceased
remains of a long term resident whom, upon entering
the building and taking a seat in the front lobby
(same location as desk clerk cage) to perhaps rest,
pas

sed away & remained for over three (3) hours before
the proper authorities were called; supposedly
undetected by deskclerk in charge. As for the
continuous and constant outbreaks of bedbug
infestation throughout various parts of the building --
Instead of treating the building floor by floor (or
entire building all at once), various units are sprayed
with chemicalsâ€¦ leaving bedbugs to flee to other
units. Perhaps this could explain the unexplained
deaths of tenants throughout the building living in
these conditions. After leaving in these conditions for
so long, three years of failed promises, theses people
need to be compensated by the landlord and paid top
dollar and then some for relocation cost &
condemning the entire place instead of evicting each,
any & all that holds back rent. Management is really
making thing bad for them all. Each tenant should be
interviewed individually and legal representation is
needed desperately.

show snippet only

absolutely horrifying on 09/16/2011

The conditions of this establishment are absolutely
horrifying. My heart goes out to the long-term
residents; many of which are elderly seniors or
disabled. Many of them receive SSI or SSA
assistance; which took yet another benefit cut
recently. This makes affording legal representation
virtually impossible. From bedbugs to the deceased

129 bedbug reports near this address:

| | |
|---|---|
| 622 Wall St | 0.148 km |
| 714 S Los Angeles St | 0.301 km |
| **CARLTON HOTEL** | 0.348 km |
| **STAY HOTEL** | 0.403 km |
| **CECIL HOTEL** | 0.405 km |
| 610 S Main St | 0.410 km |
| 533 S Los Angeles St | 0.428 km |
| 412 E 5th St | 0.466 km |
| **BALTIMORE HOTEL** | 0.470 km |
| 427 E 5th St | 0.501 km |
| 121 E 5th St | 0.508 km |
| 650 S Spring St | 0.533 km |
| **HAYWARD MANOR APARTMENTS** | 0.575 km |
| 206 W 6th St | 0.579 km |
| **ROSSLYN HOTEL** | 0.595 km |
| 451 S Main St | 0.611 km |
| 510 S Spring St | 0.616 km |
| **ALEXANDRIA HOTEL** | 0.643 km |
| **YORKSHIRE APARTMENTS & HOTEL** | 0.684 km |
| **BARCLAY HOTEL** | 0.732 km |
| **MILLENNIUM BILTMORE HOTEL LOS ANGELES** | 1.112 km |
| **HILTON CHECKERS LOS ANGELES** | 1.132 km |
| **STILLWELL HOTEL** | 1.197 km |
| **KYOTO GRAND HOTEL AND GARDENS** | 1.203 km |
| **KAWADA HOTEL** | 1.223 km |
| **OMNI LOS ANGELES HOTEL AT CALIFORNIA PLAZA** | 1.234 km |
| **SHERATON LOS ANGELES DOWNTOWN** | 1.293 km |
| **CERECERES, CESAR OWNER - LOS ANGELES ADVENTURE TOURS** | 1.374 km |
| 550 S Flower St | 1.376 km |
| 330 W 11th St | 1.477 km |
| **RITZ MILNER HOTEL** | 1.495 km |



Shop the
right store
for the job.

ZIP CODE

Find your Ace

Exhibit 10 D



## DTLA Residents at Madison Hotel and LA CAN File Suit Against Building Owner/Management

644 views                                    👍 6      👎 0      ➤ SHARE      ≡+ SAVE      • • •

**LA CAN**
Published on Nov 30, 2015                                    SUBSCRIBE 140

Link to the full complaint: http://bit.ly/1YEchHV.

To stop ongoing harassment by management and address long-standing habitability issues, 16

SHOW MORE

Up next                                                      AUTOPLAY

An Oral History of Skid Row - Full Segment

EXHIBIT 10E

  

For Immediate Release

**Contact:**
Franke Santos, Legal Aid Foundation of Los Angeles, 323-801-7981, fsantos@lafla.org
Lisa Dulyea, Inner City Law Center, 213-891-3234, ldulyea@innercitylaw.org
Eric Ares, Los Angeles Community Action Network, 213-228-0024, erica@cangress.org

# Low-income Tenants Win
# Another Fight Against Slumlord
# Who Stands to Profit $4.2 Million in Potential Sale

LOS ANGELES, June 20, 2016 — Low-income tenants of the Madison Hotel no longer need to suffer abuse at the hands of management. Today, Judge Yvette M. Palazuelos issued a temporary restraining order that forbids owners and management of the residential hotel from harassing the residential hotel's tenants. Real estate mogul Kameron Segal, who bought the Madison last year for $5.6 million, stands to profit more than $4 million if the building is sold.

Despite a lawsuit and two preliminary injunctions, low-income tenants of the Madison Hotel continued to face a barrage of harassment at the hands of management taking direction from Segal. Today's ruling is a huge victory for 16 low-income residents of the Madison, many of whom are elderly, disabled, and military veterans, and for Los Angeles Community Action Network (LA CAN), a tenant-organizing group.

The Madison Hotel, located at 423 E. 7th St., is one of the few remaining affordable housing options in the downtown area. Many of the tenants, some of L.A.'s most vulnerable residents, have called the building home for decades. Since the June 2015 purchase of the building, 423 E. 7th Street, LLC, and its management company, William Holdings, LLC, both managed by Segal, have engaged in a range of illegal, deplorable tactics apparently aimed at forcing tenants to leave their homes. Management employees have ridiculed individuals for their disabilities, age and sexual orientation, demanded access to plaintiffs' units at all hours and for questionable reasons, and threatened to forcibly remove tenants from their units. When LA CAN attempted to organize tenants to fight back, management banned guests, including tenant organizers and attorneys. Tenants, most of whom cannot afford to leave, have no way to escape this harassment and the resulting emotional harm and fear.

Management has also neglected much-needed maintenance. The building is infested with roaches due to irregular trash collection, furniture is infested with bed bugs, and the building's only elevator is often out of service — trapping disabled residents in their rooms for days at a time.

Exhibit 10F

The plaintiffs filed the ongoing lawsuit against the hotel's owners and management, regarding harassment and uninhabitable conditions at the building, in November 2015. They are represented by attorneys from Legal Aid Foundation of Los Angeles (LAFLA) and Inner City Law Center (ICLC). In March, Judge James C. Chalfant granted a preliminary injunction requiring William Holdings, 423 E. 7th Street LLC, and Kameron Segal to respect tenants' right to host guests and to permit tenants' rights organizers to enter the building to meet with residents. This was the second preliminary injunction granted to plaintiffs. The first, issued on February 11, 2016 ordered the defendants to heat the building during the winter months.

The 222-unit property is currently on the market for $9.8 million. If it sells at that price, Segal stands to make $4.2 million on the deal, in part because of the rapid gentrification of downtown Los Angeles.

**About Legal Aid Foundation of Los Angeles (LAFLA)**
Legal Aid Foundation of Los Angeles is the frontline law firm for poor and low-income people in Los Angeles and Long Beach. It provides direct legal representation and other legal assistance for low-income people in civil legal matters.

**About Inner City Law Center (ICLC)**
Inner City Law Center is a non-profit law firm serving the most vulnerable individuals and families in Los Angeles. As the only legal services provider headquartered on Skid Row, ICLC focuses on combating slum housing, preventing homelessness, and aiding homeless veterans.

**About Los Angeles Community Action Network (LA CAN)**
LA CAN is a community-based membership organization with the mission to help people dealing with poverty create and discover opportunities, while serving as a vehicle to ensure they have voice, power and opinion in the decisions that are directly affecting them.



f G+ © ↗ ✈                    ABOUT    STAFF    CONTACT    ADVERTISE    FAQ    PRIVACY POLICY    TERMS OF SERVICE

| CRIME | GOVERNMENT | BUSINESS | EDUCATION | SPORTS | HOLLYWOOD | LIFE | OC | Search... |

**LATEST NEWS** Robert Durst Ordered to Stand Trial for Benedict Canyon Killing

Home » Business » This Article

# Sister of woman killed inside L.A.'s Madison Hotel sues hotel's owners

POSTED BY JOHN SCHREIBER ON NOVEMBER 24, 2014 IN BUSINESS | 828 VIEWS | LEAVE A RESPONSE

Share this article:





Photo by John Schreiber.

The owners of the Madison Hotel were sued Monday by a woman who alleges the killing of her sister at the downtown Los Angeles establishment could have been prevented.

Andrea Bickman filed the lawsuit in Los Angeles Superior Court, alleging wrongful death, negligence and premises liability.

Named as defendants are Bellaire-Downtown LLC and Sheri Bickman's alleged killer, Orlando Wagner.

A representative of Bellaire-Downtown could not be immediately reached.



GET THE LATEST NEWS BY EMAIL!

Sign up here for our free newsletters. We'll send you the latest headlines every morning and every weekday afternoon.

Email Address

SUBSCRIBE

The complaint states that Sheri Bickman, 57, was held captive, then beaten and strangled in a room of the hotel at 423 E. Seventh St. on May 9. The lawsuit does not state whether the victim lived at the location or was visiting.

Exhibit 10 H



# Skid Row Hotel Conditions Are So Bad Resident Collecting Bed Bugs As Proof

by Carman Tse in News on December 1, 2015 12:00 AM

Tenants of one of the last few residential hotels on Skid Row say the new landlord is allowing living conditions to deteriorate to drive the residents out. One resident is collecting bed bugs in a jar as proof.

On Monday, the tenants of the Madison Hotel on 7th Street filed a lawsuit against owner Kameron Segal and his management company, William Holdings, saying management stopped providing basic amenities and also threatened residents with eviction if they complained. While the hotel provides a cheap option for many people who can't afford Los Angeles' expensive housing market—with rooms between $290 and $500 a month—about a third have already left, according to the L.A. Times.

"I'm looking for other options," tenant Walter Jordan, one of 15 plaintiffs in the lawsuit, told KPCC. "But the end result is that I shouldn't have to move."

Residents say that amenities such as maid service, linen cleaning and toilet paper restocking have been canceled and trash is piling up in the hotel. The unsanitary conditions have allowed for cockroaches and bed bug infestations. Jordan said he has already collected 80 bed bugs in a jar. "I'm sleeping on the floor," he said. "I had my own personal bed infected. They've refused to replace it."

The suit alleges that Segal is trying to force out tenants so he doesn't have to spend money on relocating the low-income residents. Management has been abusive and threatened residents with eviction if they complain, they further contended. According to the suit, one manager has stated that the owners plan on renovating the building once all the tenants leave.

Segal purchased the property in June.

Advocates say single-room occupancy hotels like the Madison are sometimes the only option for people, such as the disabled and the elderly. "They are the housing of last resort and they are what's keeping people off the street," Lisa Payne, of the Southern California Association of Non-Profit Housing, told KPCC.

*Contact the author of this article or email tips@laist.com with further questions, comments or tips.*



TWITTER      FACEBOOK      REDDIT      PRINT

Tags:

HOMELESSNESS , SKID ROW

BEST OF LAIST

## 30 Rock's Werewolf Bar Mitzvah: An Oral History

## All The Best LA Halloween Parties Happening This Pre-Halloween Weekend

# Tenant Victory in Skid Row Ends Systemic Harassment

LOS ANGELES, April 4, 2017 — Tenants in a Skid Row affordable housing building have settled a lawsuit with the building's owner, management company, and former owner over mistreatment and harassment of tenants, including many who are disabled, veterans and elderly.

In November 2015, 15 long-term residents of the Madison Hotel, at 423 E. 7th St., and a tenant-organizing group, Los Angeles Community Action Network (LA CAN), sued the landlord and management company, alleging they violated tenants' civil rights and failed to provide habitable conditions in the 220-room building. The parties were represented by nonprofit law firms Legal Aid Foundation of Los Angeles and Inner City Law Center, as well as *pro bono* counsel from Skadden, Arps, Slate, Meagher & Flom.

Before the lawsuit, defendants had launched a harassment campaign against tenants that included taking away common areas where tenants previously gathered, leaving the heat turned off through cold winter nights, allowing bedbug and roach infestations to fester, making derogatory comments toward residents, refusing to clean the shared bathrooms, denying access to tenants' guests, and refusing to repair the building's elevator, which effectively imprisoned those tenants whose physical impairments restricted them from using the stairs. As a result of this ongoing harassment, many residents were forced to leave.

Owner Kameron Segal stated that he was taking steps to force out current Madison tenants in order to get "better tenants," meaning "those who are willing to pay market rents." Current tenants' rents are between $290-$500 per month. Prior to legal intervention, Segal managed to vacate about half of the units in the building, which is situated in LA's Skid Row, the area with the highest concentration of homeless residents in the country.

Defendants named in the lawsuit were 423 E. 7th Street LLC, property management company William Holdings LLC, Kameron Segal, former management company Bellaire-Downtown LLC, and former owner George Lintz. The defendants admit no wrongdoing.

"This is a victory not only for Madison tenants, but for all low-income residents throughout downtown who call this neighborhood home," said Ariana Alcaraz, a tenant organizer with LA CAN. "We must continue to find effective ways, in addition to lawsuits, to protect vulnerable tenants who are fighting shady building owners attempting to gentrify our community and displace poor folks."

The Madison Hotel and buildings like it are "the housing of last resort," said Fernando Gaytan, managing attorney with Legal Aid Foundation of Los Angeles. "Los Angeles is one of the most expensive housing markets, and we can't afford for this kind of housing to go away. It keeps veterans and people living on fixed incomes close to their networks of social services, and allows them to live independently." Many residents of the hotel would be homeless if such affordable housing weren't available, Gaytan said.

Under the settlement agreement, William Holdings and Segal have agreed to restore services, including keeping the shared bathrooms clean, and turning the heat on when needed; they agreed to ensure repairs are responded to within 12 hours for emergencies and three days for other issues. Guests, who had been banned from the hotel, are allowed again. In addition, all staff will receive anti-discrimination and anti-harassment training, and the building will institute a policy for reasonable accommodation of tenants' disabilities consistent with applicable law.

Defendants will also pay $610,000 in damages and attorneys' fees as part of the settlement.

"We are thrilled to have reached a resolution that will allow our clients and others in need of low-cost downtown housing to continue calling the Madison home," said Amanda Goad, director of litigation with Inner City Law Center. Goad further noted: "We look forward to seeing conditions in the building improve through restoration of services and training for staff."

Segal purchased the building in June 2015 for $5.6 million and quickly put it on the market. The building is no longer for sale.

## Tenants at Skid Row's Madison Hotel sue to improve conditions

Exhibit 105



Tenants at the Madison, a single-room occupancy hotel, are suing the owner for poor living conditions.
*Josie Huang/KPCC*

Josie Huang | December 1, 2015

Listen to story

00:49
Download this story 0.0MB



•

**AHF**

# (HTTPS://WWW.AIDSHEALTH.ORG/)

Exhibit 10K



# 'We Love LA!' Event Honors Madison Hotel's Transition as Housing for Homeless

In News (https://www.aidshealth.org/category/news/) by AHF / February 14, 2018

OPEN HOUSE & PRESS CONF: Wednesday, February 14th 10:30 AM to 1:30pm

*Also: New* ***'Homeless'*** *billboards echo iconic 'Hollywood' sign, cut to the heart of the crisis in L.A. and also expose bureaucrats' lax response (See: 'LAScandal.org')*

Exhibit 14Y    ~14

LOS ANGELES (February    , 2018) On Valentine's Day, Wednesday, February 14th, advocates and officials with **'Healthy Housing Foundation by AHF,'** a new program spearheaded by AHF to address the housing crisis by providing faster access to transitional and longer-term housing with a focus on addressing the needs of low-income individuals and those unsheltered or homeless, are opening their doors—and their hearts—with a Valentine's Day '**We Love LA!'** open house and press event at the **Madison Hotel** in Downtown Los Angeles (423 E. 7th Street LA, CA 90014).

The open house will showcase the Foundation's work-in-progress repurposing the Madison Hotel, a 220 room Single-Room-Occupancy (SRO) hotel on Skid Row in Downtown Los Angeles, into transitional housing for the homeless and low-income individuals, with priority placement offered to those with chronic health conditions.

## Background on 'Healthy Housing Foundation by AHF' and the Madison Hotel & Sunset 8 Motel

The launch of the 'Healthy Housing Foundation by AHF' is part of a community-based effort to address the exploding housing and homelessness crisis in Los Angeles. AHF purchased the Madison Hotel[1], in Downtown L.A. in October 2017, followed quickly by the January, 2018 purchase of a 27-room motel[2]  in the heart of Hollywood known as the **Sunset 8 Motel**.

'Healthy Housing Foundation by AHF' is renovating and upgrading both the former Sunset 8 and the Madison and is prioritizing housing placements for individuals—and in the case of the Sunset 8, individuals *AND* families—with chronic health conditions (but not necessarily HIV or AIDS). The Madison had approximately 80 tenants in place at the time of the purchase, and *NO* Madison tenants have been or will be displaced or evicted as that transition and renovation process continues to unfold.

**New 'Homeless' Billboard Campaign Echoes Famed 'Hollywood' sign; Lacerates Lax Bureaucrats** In addition to the open house and press briefing at the Madison Hotel on Valentine's Day, a striking new 'Homeless' billboard campaign (https://www.aidshealth.org/wp-content/uploads/2018/02/Homeless-Hollywood-Sign.pdf) intended put the spotlight on the burgeoning homeless and housing crisis in Los Angeles as well as what many advocates see as a lax, insufficiently urgent response from bureaucrats and elected officials, launched this week with at least 15 billboards posted throughout Greater Los Angeles.

The **'Homeless'** billboards echo the iconic 'Hollywood' sign, except that in a subtle, ironic take, the billboard replaces the letters after the "H" and the "O" in "HOLLYWOOD" to spell out "HOMELESS."

"Simply swapping out seven letters from the word 'Hollywood' and replacing them with six from the word 'Homeless,' in the format of the iconic Hollywood sign creates an ironic, powerful and visceral new message that cuts to the heart of the crisis here in Los Angeles and is one that many Angelenos will immediately relate to or identify with," said **Michael Weinstein**, President of AHF.

The only additional text on the 'Homeless' billboard is the web address for 'LAScandal.org (http://www.lascandal.org/)' (done in the style of the ubiquitous green Caltrans freeway signs posted throughout the state) where viewers of the billboards and the public can get information on the homeless crisis, learn about the sclerotic response from government and elected officials and find links to directly contact their L.A. City Council Member or L.A. County Supervisor to urge them to act decisively and more quickly to address the crisis.

**Snapshot of The Housing Crisis: Los Angeles**

- The 2017 homeless coun in Los Angeles County was nea 58,000 (57,794), a 23% INCREASE from 2016

- The sharp rise, to nearly 58,000, suggested that the pathway into homelessness continues to outpace intensifying efforts that — through rent subsidies, new construction, outreach and support services — got more than 14,000 people permanently off the streets last year. (Los Angeles Times (http://www.latimes.com/local/lanow/la-me-ln-homeless-count-20170530-story.html), 5/31/17 by Doug Smith & Gale Holland)

- Homelessness also increased sharply in the City of Los Angeles in 2017, where the count of just over 34,000 was UP 20% from 2016. (L.A. Times (http://www.latimes.com/local/lanow/la-me-ln-homeless-count-20170530-story.html) 5/31/17)

[1] The purchase price for the **Madison Hotel** was **$7,575,000**, (the parking lot was $450K – total $8,025,000.00 less a repair credit of $25K and a donation of $50K to AHF – net price $7,950,000) or approximately $36K per room or unit.

[2] The purchase price for the 27-room **Sunset 8 Motel** was $4.6 million, or $170,370 per room or unit.

(https://www.aidshealth.org/2018/02/love-la-event-honors-madison-hotels-transition-housing-homeless-fundraiser-lgbt-gay-lesbian-aids-hiv-bareback-condoms-always-fashion/)

🐦 (https://www.aidshealth.org/2018/02/love-la-event-honors-madison-hotels-transition-housing-homeless/?share=twitter&nb=1)

📘 (https://www.aidshealth.org/2018/02/love-la-event-honors-madison-hotels-transition-housing-homeless/?share=facebook&nb=1)

G+ (https://www.aidshealth.org/2018/02/love-la-event-honors-madison-hotels-transition-housing-homeless/?share=google-plus-1&nb=1)



**LOS ANGELES**

Exhibit 10L

DOWNTOWN     LOS ANGELES AFFORDABLE HOUSING     MAKEOVERS                                         8 ,

# AIDS Healthcare Foundation buys third Skid Row building for homeless housing

*It's the fourth LA property AHF has purchased to create more low-income housing*

By **Bianca Barragan** | Updated Aug 24, 2018, 4:48pm PDT



The Baltimore Hotel, on the left. The building on the right, the King Edward Hotel, is also owned by the AIDS Healthcare Foundation. | Google Maps

The AIDS Healthcare Foundation announced today it has purchased the Baltimore Hotel at Fifth and Los Angeles streets. As AHF has done on a handful of other properties, the organization plans to transform the turn-of-the-century hotel into housing for homeless people and low-income tenants.

The 204-room Baltimore, which currently operates as single-room occupancy hotel, has 76 existing tenants who will remain in their homes, said a release from AHF.

The organization paid $20 million for the hotel. AHF says the Baltimore will require "modest improvements and repairs," including painting the walls, updating the floors, and making plumbing improvements

Exhibit 10 M   1/2



**CURBED**

**LOS ANGELES**

DOWNTOWN      LOS ANGELES AFFORDABLE HOUSING      LOS ANGELES DEVELOPMENT                    6

# AIDS Healthcare Foundation will get into the affordable housing game

*AHF is converting a building in Skid Row into housing for people with HIV*

By **Bianca Barragan**  |  Oct 6, 2017, 3:32pm PDT



Courtesy of Steven Ziegler

The AIDS Healthcare Foundation is branching out to become a developer and provider of affordable housing. The *Los Angeles Times* reports that the organization has purchased a building on Seventh Street in Skid Row that it plans to turn into shelter, giving priority to tenants with HIV "and other chronic illnesses."

The single-room occupancy hotel is called the Madison, and current tenants will be allowed stay, AHF tells the *Times*, paying rent below under $400.

AHF is also buying a motel in Hollywood, and, in Florida, it expects to start construction on "hundreds" of new units next year.

"The current model does not work," AHF's top executive, Michael Weinstein told the *Times,* speaking about affordable housing as it is now. "It takes too much time. It costs too much money. And in a lot of cases, it excludes the people that need the most help."

AHF has pitted itself against an array of developers, including those that build affordable housing, by launching and financing Measure S. The March ballot initiative would have place a two-year moratorium on some larger-scale real estate development citywide, but it was defeated by voters.

If you can't beat 'em, join 'em, right?

AHF's idea to buy buildings and rent them at affordable prices to people living with HIV isn't new. AIDS advocacy organization Housing Works in New York has been successfully buying building and providing stable housing for the HIV-positive since the early 1990s.

- This AIDS nonprofit lost a political battle over housing and development. Now it's fighting a new way [LA Times]

*Watch*   Exhibit 10N

remain in place.

Other Healthy Housing Foundation properties include the 150-room King Edward Hotel directly across the street from the Baltimore; the nearby 202-room **Madison Hotel** on 7 [th] St. and the former **Sunset 8 Motel**, a 27-room, 1940s era roadside motel in the heart of Hollywood that has been renamed 'Sunrise on Sunset.' The Hollywood property has been repurposed to specifically accommodate homeless parents and their children, while the three other facilities, as former hotels and SROs, are targeted individual adults. Combined, the four properties the non-profit organizations purchased and redeployed for homeless housing have nearly 600 rooms.

Advocates Again Urge Los Angeles Officials to Adopt SRO Model for Homeless

During the Friday press conference, housing advocates from the Healthy Housing Foundation and AHF will again urge officials from both the City and County of Los Angeles to adopt the SRO hotel model as an existing—and cost-effective—approach to addressing homeless housing that AHF and Healthy Housing have been successfully deploying since October 2017 with their initial purchase of the Madison Hotel.

By comparison, Measure HHH, the well-intentioned Los Angeles City bond measure authorizing $1.2 billion in bonds to pay for the construction of 10,000 units of housing for homeless people and that passed with 76% of the vote in November 2016 **has yet to house a single homeless individual**.

And the homeless—as well as voters who supported Measure HHH—will unfortunately not find any relief from the bond measure anytime soon: the first housing available for occupancy in Los Angeles under HHH will not come online **until the fall or winter of 2019**, when construction of the first projects—which city officials have estimated at a cost of $434,000 [1] per unit—is completed.

By comparison, Healthy Housing Foundation's costs-per-unit for purchase and modest improvements and repairs of existing single room occupancy (SRO) hotels and motels are *far* less: $70,000 per room at the King Edward; $36,000 per room for the Madison; $170,000 per room or unit for the former Sunset 8 and approximately $82,000 per room for the newly purchased Baltimore hotel.

"Beyond talk, the Healthy Housing Foundation is focused on the actions of producing and preserving affordable housing for the citizens of Los Angeles in a revolutionary way that is long overdue," said **Samantha Granberry**, Executive Director of the Healthy Housing Foundation and Vice President, AHF Sales & Strategic Partnerships. "If we can do it, others in positions of ability should follow suit. Working together, this crisis *is* solvable."

"There are several of these formerly grand old hotels in the downtown area that are un- or under-occupied and that could be successfully converted to housing stock far more quickly and for far less money that the cost to build new housing for the homeless through Measure HHH's current guidelines," said **Michael Weinstein**, President of AHF. "We have estimates of as many as 5,000 empty SRO hotel rooms in Los Angeles. We challenge Los Angeles officials to fully consider the SRO model we are deploying and adopt it as another means to address L.A.'s homeless crisis in a more timely, efficient and compassionate manner."


(/)

We Give you the News -July 2018 (https://www.wehoville.com/subscribe-to-wehoville-com/)

Gonorrhea Alert (https://locations.freestdcheck.org/)

search wehoville        search

(https://www.weho.org/community/arts-and-culture)

# Opinion: AHF Converts Cheap Hotels to Homeless Housing. What About It West Hollywood?

Friday - February 16, 2018 by Jim Chud (https://www.wehoville.com/author/jchudd/) | 14 Comments



AHF President Michael Weinstein unveils an image of its new billboard at the opening Wednesday of the Madison Hotel for the homeless on Skid Row.

I have spent the better part of 25 years advocating for affordable housing. Way back when, before I started my campaign, I had developed an addiction to cocaine, my way of dealing with the emotional and physical pain of losing my first lover and countless friends on the East Coast and in Northern California. I went from one of the nicest places I have ever lived in Santa Monica to living on the streets for three months.

Initially, since I still had money to burn through and a car, life didn't seem so bad. It got worse, much worse. This was in the 80's, and there were several communities in the beach area that offered what seemed to be a comfortable life on the streets. It was almost like reading a travel brochure: "Come to sunny California, where sleeping outside





(http://sunsetwalk-inhealthcare.com/)

Exhibit 10 ② 43

under the stars is legal, the warm breezes blow, and the price is low. No more bundling up on the subway grates, and the city provides warm showers, clean clothes, and drugs are right at your doorstep."





The Madison Hotel on 7th Street in L.A.'s Skid Row

I was lost and scared and too embarrassed to ask for help. I learned that fear and shame are the two things that no one wanted to think about, and the longer one stayed on the streets, the less anyone wanted to hear about an alternative. How I didn't end up in jail, I don't know. Jail was just something that happened to everyone else, and it wasn't a big deal to them. That didn't work for me thank God – so I did the impossible and called for help.

It's not like that today, L.A.'s 50-square-block Skid Row is a disaster bearing the edifices of various attempts to start to solve a homeless problem that is totally out of control. Over 25,000 people sleep, butt-to-elbow, in and out of the tents that line the sidewalks on too many of these blocks. Despite initiatives by L.A. County's Housing and Health program, headquartered in the Star Housing building on 5th Street and the Weingarten Center, all anyone is doing is planning and having meetings and planning some more. L.A. Mayor Garcetti has announced money here and initiatives there, but nothing is really attacking this issue at a meaningful scale.

Enter AIDS Healthcare Foundation (https://www.aidshealth.org/) (AHF), the provider that everyone loves to hate, with it Healthy Housing Foundation. In short order, and with no government funding, AHF bought and has begun to renovate the 222-room Madison Hotel on 7th Street, and I attended an event on Wednesday celebrating that. Now, make no mistake, I have had my issues with AHF from time to time, and I tend to cast a suspicious eye on everything it does in L.A., but I have to hand it to them. AHF took action, something we need a lot more of.

According to its figures, while the City of Los Angeles is claiming that affordable housing costs over $400,000 a unit to develop, the per-unit cost at the Madison, including the building purchase price, was

(http:www.wehosunsettrip.com)

City of West Hollywood's Arts Division Presents



(https://artistsandicons-nov2018.eventbrite.com)

(///ad.broadstreetads.com/click/171116 2382/z65530?)

$37,000. Granted, these are single room units (SROs), and while they are nothing fancy, they have new beds, they have been newly painted, and the building, still under renovation, is being brought up to the Americans with Disabilities Act (ADA) compliance codes. These beds are for anyone needing a safe, clean home, regardless of where he or she is in Los Angeles. As of the grand opening on Wednesday there were 50 rooms ready for occupancy.



Along with this property, AHF has purchased the 27-room Sunset 8 motel on Sunset Boulevard in Hollywood. I can state, based on personal experience, that this was part of the circuit of "crack hotels" in Hollywood. It is farther along in its modernization than the Madison. These are larger units, and this was a total gut and rebuild. The motel was redone for approximately $130,000 per unit, still way lower than the city's estimate of over $400,000 to build a unit to house the homeless. AHF also is developing a larger building from the ground up in Fort Lauderdale, Fla.

At the Madison's opening ceremony on Wednesday, I spoke with Samantha Granberry, the executive director of the AHF's Healthy Housing Foundation (http://www.healthyhousingfoundation.net/). What a dynamo! Her positive "can do" attitude was infectious, and her openness to suggestions and comments was encouraging. Everyone I met on Wednesday who is involved in this project shared her qualities. If this is emblematic of the caliber and drive of those who are running the show, I think that it is time we start forming partnerships and thinking about getting people off the streets regardless of historic disagreements and legacy battles and welcome a new provider that has the critical mass and resources to get things done.

Let's get real here, L.A.'s homeless problem (and that of West Hollywood) is getting worse, not better. The distinction of having more people on our streets and beaches than any other city in America is not one to be proud of. Sure, it is important that every stakeholder's needs are met, but we need to start somewhere. I know how important an address is to development of the self-esteem required to start the process of recovery from homelessness. While facilities like the Madison do not solve the homeless problem by themselves, they are a

(https://www.weho.org/community/arts-and-culture)

Case 2:18-cv-09418-FMO-AFM   Document 1   Filed 11/05/18   Page 71 of 93   Page ID #:71

Exhibit P

10/25/2018          This AIDS nonprofit l          political battle over housing and development. Now it'       iting a new way - Los Angeles Times



The AIDS Healthcare Foundation has spent roughly $8 million to purchase the Madison Hotel, a single-room-occupancy building on Seventh Street that it plans to spruce up and rent out, giving priority to people with HIV and other chronic illnesses. (Wally Skalij / Los Angeles Times)

When the AIDS Healthcare Foundation campaigned unsuccessfully this spring for a ballot measure to crack down on "mega projects," affordable housing developers argued the proposal would hurt poor renters and thwart sorely needed construction.

Now the huge nonprofit is getting into affordable housing itself, saying it can provide it quicker and cheaper than such groups.

inRead invented by Teads

Case 2:18-cv-09418-FMO-AFM   Document 1   Filed 11/05/18   Page 72 of 93   Page ID #:72

10/25/2018          This AIDS nonprofit l‹   political battle over housing and development. Now it'   ‹ting a new way - Los Angeles Times

Learn more



ADVERTISEMENT

"The current model does not work," said its top executive, Michael Weinstein. "It takes too much time. It costs too much money. And in a lot of cases, it excludes the people that need the most help."

[□] TOPICS                    **$1 FOR 3 MONTHS**          →] LOG IN
                              Sale ends 11/7

MIDTERMS SALE | **$1 FOR 3 MTHS**

hundreds of poor tenants. It is also buying a Hollywood motel and says it plans to break ground on hundreds of new units next year in Florida.

"We're in the market for more properties," Weinstein added. "We don't want to see them turned into techie apartments for $2,500 a month."

# We're in the market for more properties. We don't want to see them turned into techie apartments for $2,500 a month.

— MICHAEL WEINSTEIN, HEAD OF AIDS HEALTHCARE FOUNDATION, ON THE NONPROFIT'S PLANS FOR AFFORDABLE HOUSING

Share quote & link                              🐦   📘

The new push brings the foundation, an outspoken critic of how real estate development has shaped Los Angeles, even farther into the simmering debate over how to ease its housing crisis. If it succeeds in providing affordable housing to Angelenos in need, it could gain new credibility in that debate, said Jaime Regalado, professor emeritus of politics at Cal State L.A.

"It's obvious that they want to be a force to be reckoned with — and I think they already are," Regalado said.

That troubles critics such as state Sen. Scott Wiener (D-San Francisco), who has repeatedly been at odds with the group during his political career. Wiener is an advocate for a pill that can prevent HIV infections, which Weinstein has viewed with skepticism, fearing that patients won't take the medicine properly and then fail to use condoms.

"It's just more empire building by Michael Weinstein," Wiener said, arguing that it was hypocritical for the group to bill itself as an affordable housing provider when its ballot measure "would have shut down a lot of housing development in L.A."

"Why can't they focus on actually providing treatment to people living with HIV?" Wiener asked.

The nonprofit is a philanthropic powerhouse that operates a global network of clinics and pharmacies and plasters cities with provocative billboards for HIV and STD testing.

It has also become a polarizing player in local and state politics, bankrolling ballot measures on drug pricing, condoms in adult films, and Los Angeles real estate development. It poured millions of dollars into the campaign for Measure S, which would have imposed a moratorium lasting up to two years on L.A. building projects that require zone changes and other alterations in city rules.

Earlier this year, Weinstein argued that Measure S would help combat gentrification that displaces the poor, including people with HIV and AIDS. He also fired back at

Case 2:18-cv-09418-FMO-AFM   Document 1   Filed 11/05/18   Page 74 of 93   Page ID #:74

10/25/2018                    This AIDS nonprofit l       political battle over housing and development. Now it'       ting a new way - Los Angeles Times

<u>critics</u> who said the measure was a NIMBY crusade that had little to do with its nonprofit mission, countering that housing was a pressing need for its patients.

Now the group says it is trying to fill that need: It has spent roughly $8 million to purchase the Madison Hotel, a single-room-occupancy building on Seventh Street that it plans to spruce up and rent out, giving priority to people with HIV and other chronic illnesses. The nonprofit says existing tenants will be able to stay, and it aims to keep monthly rents under $400.

"Part of our goal is to show that this is financially viable and sustainable in the long run," Weinstein said.

Alice Callaghan, who heads a community center near the Madison, applauded the effort. "We're losing so much housing every year," said Callaghan, director of Las Familias del Pueblo. "We need to encourage another set of players to fix up places and rent them out as clean, safe housing for the very poor."

ADVERTISEMENT

The high cost of creating affordable housing has been a persistent concern for policymakers: New affordable units in California cost an average of $332,000, which limits the amount of housing that can be built, Gov. Jerry Brown noted in a budget summary this year. In <u>an earlier study</u>, state agencies found that costs were driven upward by a wide range of factors, including regulatory requirements for construction tied to public funds, local government requirements that spur changes in building design, and delays caused by community opposition.

"If they bring a fresh perspective, I welcome them," said Alan Greenlee, executive director of the Southern California Assn. of Non-Profit Housing, which <u>opposed</u>

Case 2:18-cv-09418-FMO-AFM Document 1 Filed 11/05/18 Page 75 of 93 Page ID #:75

10/25/2018          This AIDS nonprofit l          political battle over housing and development. Now it'          iting a new way - Los Angeles Times

Measure S. "If they hit on something that's new and innovative, by all means we should rush to adopt that."

However, "it's not like our members haven't been looking for ways to cut costs," said Greenlee, whose group includes affordable housing providers. "I'm not saying it's impossible — but it's not easy either."

Mark Vallianatos, another opponent of the ballot measure and an advocate for rules that make development easier, welcomed the new effort from the foundation.

"This is how you solve the problem," said Vallianatos, director of the LAplus think tank. "Not by trying to stop new housing."

The foundation, which has sued over planned developments in Hollywood, has continued to speak up on development issues after Measure S was heavily defeated this spring. The Coalition to Preserve L.A., whose director headed that campaign, is still being funded by the nonprofit and has been raising concerns about how L.A. is updating rules that govern development.

Its efforts have sometimes been at odds with groups that build affordable housing: AHF opposed a state bill requiring cities and counties to limit environmental, planning and other reviews for some developments, which was recently signed into law by Brown and touted as a way to ease housing construction.

Backers of SB 35, which was authored by Wiener, included the California Council for Affordable Housing and Mercy Housing California.

ADVERTISEMENT

# EXHIBIT ___11

Exhibit 11A

**UD-150**

---

ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address):*

DONAT RICKETTS
423 E. 7TH STREET #515
LOS ANGELES, CA 90014

TELEPHONE NO.: 424-207-4665   FAX No. *(Optional):*
E-MAIL ADDRESS *(Optional)*: DONAT.ASHFORD@GMAIL.COM
ATTORNEY FOR *(Name):* IN PRO PER

**FOR COURT USE ONLY**

**FILED**
Superior Court of California
County of Los Angeles

SEP 4 - 2018

Sherri R. Carter, Executive Officer/Clerk
By _____, Deputy
    Grace Lin

SUPERIOR COURT OF CALIFORNIA, COUNTY OF STANLEY MOSK COURTHOUSE
STREET ADDRESS: 111 N. HILL STREET
MAILING ADDRESS: 111 N. HILL STREET
CITY AND ZIP CODE: LOS ANGELES, CA 90012
BRANCH NAME: CENTRAL

PLAINTIFF: AIDS HEALTHCARE FOUNDATION

DEFENDANT: DONAT RICKETTS

| | | CASE NUMBER: |
|---|---|---|
| [✔] **REQUEST**   [ ] **COUNTER-REQUEST** | | 18STUD09220 |
| **TO SET CASE FOR TRIAL—UNLAWFUL DETAINER** | | |
| [ ] **Plaintiff**   [✔] **Defendant** | | |

1. [ ] **Plaintiff's request.** I represent to the court that all parties have been served with process and have appeared or have had a default or dismissal entered against them. I request that this case be set for trial.

2. **Trial preference.** The premises concerning this case are located at *(street address, apartment number, city, zip code, and county):*
   423 E. 7TH STREET #515 LOS ANGELES, CA 90014 LOS ANGELES, COUNTY
   a. [✔] To the best of my knowledge, the right to possession of the premises is still in issue. This case is entitled to legal preference under Code of Civil Procedure section 1179a.
   b. [ ] To the best of my knowledge, the right to possession of the premises is no longer in issue. No defendant or other person is in possession of the premises.

3. **Jury or nonjury trial.** I request [✔] a jury trial   [ ] a nonjury trial.

4. **Estimated length of trial.** I estimate that the trial will take *(check one):*
   a. [ ] days *(specify number):*   b. [✔] hours *(specify if estimated trial is less than one day):* 1

5. **Trial date.** I am not available on the following dates *(specify dates and reasons for unavailability):*
   09/25/2018 or 09/28/2018 Because I have a hearing at Van Nuys Courthouse and this court on those dates.

**UNLAWFUL DETAINER ASSISTANT (Bus. & Prof. Code, §§ 6400–6415)**

6. *(Complete in all cases.)* An unlawful detainer assistant [✔] did **not**   [ ] did   for compensation give advice or assistance with this form. *(If declarant has received any help or advice for pay from an unlawful detainer assistant, complete a–f.)*

   a. Assistant's name:                              c. Telephone no.:
   b. Street address, city, and zip code:            d. County of registration:
                                                     e. Registration no.:
                                                     f. Expires on *(date):*

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 09/02/2018

DONAT RICKETTS                              ▶ _____
*(TYPE OR PRINT NAME)*                         *(SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)*

---

**NOTICE**

- An unlawful detainer case must be set for trial on a date not later than **20 days after the first request** to set the case for trial is made (Code Civ. Proc., § 1170.5(a)).
- If a jury is requested, $150 must be deposited with the court 5 days before trial (Code Civ. Proc., § 631).
- Court reporter and interpreter services vary. Check with the court for availability of services and fees charged.
- If you cannot pay the court fees and costs, you may apply for a fee waiver. Ask the court clerk for a fee waiver form.

Page 1 of 2

Form Adopted for Mandatory Use
Judicial Council of California
UD-150 [New January 1, 2005]

**REQUEST/COUNTER-REQUEST TO SET CASE
FOR TRIAL—UNLAWFUL DETAINER**

Code of Civil Procedure, §§ 631,
1170.5(a), 1179a
www.courtinfo.ca.gov

09/5/2018

EXHIBIT HB

| PLAINTIFF: AIDS HEALTHCARE FOUNDATION | CASE NUMBER: |
|---|---|
| DEFENDANT: DONAT RICKETTS | 18STUD09220 |

## PROOF OF SERVICE BY MAIL

**Instructions:** *After having the parties served by mail with the* Request/Counter-Request to Set Case for Trial—Unlawful Detainer, *(form UD-150), have the person who mailed the form UD-150 complete this* Proof of Service by Mail. *An **unsigned** copy of the* Proof of Service by Mail *should be completed and served with form UD-150. Give the* Request/Counter-Request to Set Case for Trial —Unlawful Detainer *(form UD-150) and the completed* Proof of Service by Mail *to the clerk for filing. If you are representing yourself, someone else must mail these papers and sign the* Proof of Service by Mail.

1. I am over the age of 18 and **not a party to this case.** I am a resident of or employed in the county where the mailing took place.

2. My residence or business address is *(specify):*
   BRIAN FILLMORE 4520 FULTON AVE. #2 SHERMAN OAKS, CA 91423

3. I served the *Request/Counter-Request to Set Case for Trial—Unlawful Detainer* (form UD-150) by enclosing a copy in an envelope addressed to each person whose name and address are shown below AND

   a. ☑ **depositing** the sealed envelope in the United States mail on the date and at the place shown in item 3c with the postage fully prepaid.

   b. ☐ **placing** the envelope for collection and mailing on the date and at the place shown in item 3c following ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

   c. (1) Date mailed:

      (2) Place mailed *(city and state):* LOS ANGELES, CA

   I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct:

   Date: 9-4-18

   BRIAN FILLMORE
   _____
   (TYPE OR PRINT NAME)                    ▶         (SIGNATURE OF PERSON WHO MAILED *FORM UD-150*)

### NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED

| | Name | Address *(number, street, city, and zip code)* |
|---|---|---|
| 4. | MARC COHEN | 541 S. SPRING ST. UNIT 1208 LOS ANGELES, CA 90013 |
| 5. | ERIC GARCETTI | 777 S. Figueroa St., Ste. 4050 Los Angeles CA 90017 |
| 6. | DOUG SMITH - LA TIMES | 2300 E. Imperial Highway El Segundo, CA 90245 |
| 7. | | |
| 8. | | |
| 9. | | |

☐ List of names and addresses continued on a separate attachment or form MC-025, titled Attachment to Proof of Service by Mail.

UD-150 [New January 1, 2005]

**REQUEST/COUNTER-REQUEST TO SET CASE FOR TRIAL—UNLAWFUL DETAINER**

Page 2 of 2

09/5/2018

Exhibit

**UD-150**

| | |
|---|---|
| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address):<br>**DONAT RICKETTS**<br>**423 E. 7TH STREET #515**<br>**LOS ANGELES, CA 90014**<br>TELEPHONE NO.: (424) 207-4665   FAX No. (Optional):<br>E-MAIL ADDRESS (Optional): DONAT.ASHFORD@GMAIL.COM<br>ATTORNEY FOR (Name): IN PRO PER | FOR COURT USE ONLY<br><br>FILED<br>Superior Court of California<br>County of Los Angeles<br>SEP 1 6 2018<br>Executive Officer/Clerk<br>Deputy |

SUPERIOR COURT OF CALIFORNIA, COUNTY OF STANLEY MOSK COURTHOUSE
STREET ADDRESS: 111 N. HILL STREET
MAILING ADDRESS: 111 N. HILL STREET
CITY AND ZIP CODE: LOS ANGELES, CA 90012
BRANCH NAME: CENTRAL

PLAINTIFF: AIDS HEALTHCARE FOUNDATION

DEFENDANT: DONAT RICKETTS

| | |
|---|---|
| [✓] **REQUEST**   [ ] **COUNTER-REQUEST**<br>**TO SET CASE FOR TRIAL—UNLAWFUL DETAINER**<br>[ ] **Plaintiff**   [✓] **Defendant** | CASE NUMBER:<br>**18STUD09220** |

1. [ ] **Plaintiff's request.** I represent to the court that all parties have been served with process and have appeared or have had a default or dismissal entered against them. I request that this case be set for trial.

2. **Trial preference.** The premises concerning this case are located at (street address, apartment number, city, zip code, and county):
   423 E. 7TH STREET #515 LOS ANGELES, CA 90014 UNITED STATES OF AMERICA
   a. [✓] To the best of my knowledge, the right to possession of the premises is still in issue. This case is entitled to legal preference under Code of Civil Procedure section 1179a.
   b. [ ] To the best of my knowledge, the right to possession of the premises is no longer in issue. No defendant or other person is in possession of the premises.

3. **Jury or nonjury trial.** I request [✓] a jury trial [ ] a nonjury trial.

4. **Estimated length of trial.** I estimate that the trial will take (check one):
   a. [✓] days (specify number): 3   b. [ ] hours (specify if estimated trial is less than one day):

5. **Trial date.** I am not available on the following dates (specify dates and reasons for unavailability):
   9/24/2018; 9/25/2018; (ASK ME ON 10/9/18).

**UNLAWFUL DETAINER ASSISTANT (Bus. & Prof. Code, §§ 6400–6415)**

6. (Complete in all cases.) An unlawful detainer assistant [✓] did **not** [ ] did   for compensation give advice or assistance with this form. (If declarant has received any help or advice for pay from an unlawful detainer assistant, complete a–f.)

   a. Assistant's name:                              c. Telephone no.:
   b. Street address, city, and zip code:            d. County of registration:
                                                     e. Registration no.:
                                                     f. Expires on (date):

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.
Date: 09/18/2018

DONAT RICKETTS                              ▶
_____            _____
(TYPE OR PRINT NAME)                       (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

---

**NOTICE**
- An unlawful detainer case must be set for trial on a date not later than **20 days after the first request** to set the case for trial is made (Code Civ. Proc., § 1170.5(a)).
- If a jury is requested, $150 must be deposited with the court 5 days before trial (Code Civ. Proc., § 631).
- Court reporter and interpreter services vary. Check with the court for availability of services and fees charged.
- If you cannot pay the court fees and costs, you may apply for a fee waiver. Ask the court clerk for a fee waiver form.

Page 1 of 2

**REQUEST/COUNTER-REQUEST TO SET CASE FOR TRIAL—UNLAWFUL DETAINER**

Code of Civil Procedure, §§ 631, 1170.5(a), 1179a
www.courtinfo.ca.gov

09/20/2018

| PLAINTIFF: AIDS HEALTHCARE FOUNDATION | CASE NUMBER: |
|---|---|
| DEFENDANT: DONAT RICKETTS | 18STUD09220 |

## PROOF OF SERVICE BY MAIL

**Instructions:** *After having the parties served by mail with the* Request/Counter-Request to Set Case for Trial—Unlawful Detainer, *(form UD-150), have the person who mailed the form UD-150 complete this* Proof of Service by Mail. *An **unsigned** copy of the* Proof of Service by Mail *should be completed and served with form UD-150.* Give the Request/Counter-Request to Set Case for Trial —Unlawful Detainer *(form UD-150) and the completed* Proof of Service by Mail *to the clerk for filing. If you are representing yourself, someone else must mail these papers and sign the* Proof of Service by Mail.

1. I am over the age of 18 and **not a party to this case.** I am a resident of or employed in the county where the mailing took place.
2. My residence or business address is *(specify):*
   ANGEL PEREZ 222 S. MAIN STREET #421 LOS ANGELES, CA 90012

3. I served the *Request/Counter-Request to Set Case for Trial—Unlawful Detainer* (form UD-150) by enclosing a copy in an envelope addressed to each person whose name and address are shown below AND

   a. [✓] **depositing** the sealed envelope in the United States mail on the date and at the place shown in item 3c with the postage fully prepaid.

   b. [ ] **placing** the envelope for collection and mailing on the date and at the place shown in item 3c following ordinary business practices. I am readily familiar with this business's practice for collecting and processing correspondence for mailing. On the same day that correspondence is placed for collection and mailing, it is deposited in the ordinary course of business with the United States Postal Service in a sealed envelope with postage fully prepaid.

   c. (1) Date mailed: 09/18/2018

      (2) Place mailed *(city and state):* LOS ANGELES, CA

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct:

Date: 09/18/2018

ANGEL PEREZ
_____
(TYPE OR PRINT NAME)

▶ *Angel Perez*
_____
(SIGNATURE OF PERSON WHO MAILED FORM UD-150)

## NAME AND ADDRESS OF EACH PERSON TO WHOM NOTICE WAS MAILED

| | Name | Address *(number, street, city, and zip code)* |
|---|---|---|
| 4. | MARC COHEN | 541 S. SPRING STREET #1208 LOS ANGELES, CA 90013 |
| 5. | | |
| 6. | | |
| 7. | | |
| 8. | | |
| 9. | | |

[ ] List of names and addresses continued on a separate attachment or form MC-025, titled Attachment to Proof of Service by Mail.

**REQUEST/COUNTER-REQUEST TO SET CASE FOR TRIAL—UNLAWFUL DETAINER**

Exhibit IIE

**FL-303**

| PARTY WITHOUT ATTORNEY OR ATTORNEY | STATE BAR NUMBER | FOR COURT USE ONLY |
|---|---|---|

NAME: Donat Ricketts
FIRM NAME:
STREET ADDRESS: 423 E. 7th Street #875
CITY: Los Angeles STATE: CA ZIP CODE: 90014
TELEPHONE NO: 424-207-4665 FAX NO:
E-MAIL ADDRESS: donat.ashford@gmail.com
ATTORNEY FOR (name): In PRO PER

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Stanley Mosk Courthouse
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

PETITIONER: Aids Healthcare Foundation
RESPONDENT: Donat Ricketts
OTHER PARENT/PARTY:

**FILED**
Superior Court of California
County of Los Angeles

OCT 15 2018

Sherri R. Carter, Executive Officer/Clerk of Court
By _____, Deputy
Diana Salazar

**DECLARATION REGARDING NOTICE AND SERVICE OF REQUEST FOR TEMPORARY EMERGENCY (EX PARTE) ORDERS**

| CASE NUMBER |
|---|
| 18STUD09220 |

**NOTICE:** Do not use this form to ask for domestic violence restraining orders. Before completing this form, read your court's local procedures for requesting temporary emergency orders and obtaining the information needed to complete item 2 of this form. Courts may grant temporary emergency orders with or without an emergency hearing. Find local rules at *courts.ca.gov/3027.htm*.

1. I am (specify) ☐ attorney for ☐ petitioner ☒ respondent ☐ other parent/party
   ☐ not a party in the case (name and title/relationship to party):

2. I ☒ did ☐ did not give notice that
   ☒ there will be an emergency court hearing on a request for temporary emergency (ex parte) orders.
   ☐ papers will be submitted to the court asking a judicial officer to grant temporary emergency orders without a hearing.
   on the date, time, and location indicated below: 8:30PM OO .OT #91

   a. Date: 10/12/18 OO Time: 8:30am ☒ Dept.: TBD ☐ Room:
   b. Address of court: ☒ same as noted above ☐ other (specify):

3. **NOTICE** (If you gave notice, complete item 3a. If you did not give notice complete item 3b or 3c.)
   a. ☐ I gave notice as described in items (1) through (5):
   (1) I gave notice to (select all that apply)
      ☐ petitioner ☒ petitioner's attorney
      ☐ respondent ☐ respondent's attorney
      ☐ other parent/party ☐ other parent's/party's attorney
      ☐ child's attorney ☐ Other (specify): also delivered to attorney's office on 10/10/18.
   (2) I gave notice
      ☒ personally on (date): 10/9/18 at (location): Stanley Moskcourthouse , California; at 2:00 ☐ a.m. ☒ p.m.
      ☒ by telephone on (date): 10/10/18 telephone no.: at ☐ a.m. ☐ p.m.
      ☒ by voicemail on (date): 10/10/18 voicemail no.: 213-223-7707 at 10:00 ☒ a.m. ☐ p.m.
      ☐ by fax on (date): fax no.: at ☐ a.m. ☐ p.m.
   (3) I gave notice (select one):
      ☒ by 10 a.m. the court day before this emergency hearing.
      ☐ after 10 a.m. the court day before this emergency hearing because of the following exceptional circumstances (specify):

Form Approved for Optional Use
Judicial Council of California
FL-303 [Rev. September 1, 2017]

**DECLARATION REGARDING NOTICE AND SERVICE OF REQUEST FOR TEMPORARY EMERGENCY (EX PARTE) ORDERS**

Family Law, §§ 2045, 3062-3064, 4620, 7710
Cal. Rules of Court, rules § 151-5.169
*www.courts.ca.gov*

*Exhibit 14F*

| | | FL-303 |
|---|---|---|
| PETITIONER: *Aids Healthcare Foundation* | | |
| RESPONDENT: *Donat Ricketts* | **CASE NUMBER** | |
| OTHER PARENT/PARTY: | *18STUP09220* | |

3. a. (4) I notified the person in 3a(1) that the following temporary emergency orders are being requested *(specify)*:

*The attorney of record was notified at court, by Voicemail and ~~text~~ personal delivery at his office.*

(5) The person in 3a(1) responded as follows: ☐ Attachment 3a(5)

*The attorney and I stipulated to a hearing on Friday.*

(6) I ☐ do ☒ do not believe that the person in 3a(1) will oppose the request for temporary emergency orders.

b. ☐ **Request for waiver of notice.** I did not give notice about the request for temporary emergency orders. I ask that the court waive notice to the other party to help prevent an immediate *(identify the exceptional circumstances)*

(1) ☐ danger or irreparable harm to myself (or my client) or to the children in the case.
(2) ☐ risk that the children in the case will be removed from the state of California.
(3) ☐ loss or damage to property subject to disposition in the case.
(4) ☐ Other exceptional circumstances *(specify)*:

Facts in support of the request to waive notice *(specify)*: ☐ Attachment 3b.

c. ☐ **Unable to provide notice.** I did not give notice about the request for temporary emergency orders. I used my best efforts to tell the opposing party when and where this hearing would take place but was unable to do so. The efforts I made to inform the other person were *(specify below)*: ☐ Attachment 3c.

4. ☒ **SERVICE OF FORMS**

a. An unfiled copy of *Request for Order* (form FL-300) for temporary emergency orders, *Temporary Emergency (Ex Parte) Orders* (form FL-305), and related documents were served on
☐ petitioner ☒ petitioner's attorney ☐ other parent/party ☐ other parent/party's attorney
☐ respondent ☐ respondent's attorney ☐ child's attorney
☐ Other *(specify)*:

b. Method of service:
☒ Personal service on *(date)*: 10/10/18 at *(location)*: 541 S. Spring Street, Los Angeles, 90013 California; at 11 ☒ a.m. ☐ p.m.
☐ Fax on *(date)*: fax no.: at ☐ a.m. ☐ p.m.
☐ Overnight mail or other overnight carrier

c. ☐ Documents were not served on the opposing party due to the exceptional circumstances specified in
☐ 3b, above ☐ 3c, above ☐ Attachment 4c.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date: 10/10/18

Donat Ricketts
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE)

FL-303 [Rev. September 1, 2017]

**DECLARATION REGARDING NOTICE AND SERVICE OF REQUEST FOR TEMPORARY EMERGENCY (EX PARTE) ORDERS**

Page 2 of 2

Exhibit 11G

**FL-300**

| PARTY WITHOUT ATTORNEY OR ATTORNEY | STATE BAR NUMBER: | FOR COURT USE ONLY |
|---|---|---|
| NAME: Donat Ricketts | | |

FIRM NAME:
STREET ADDRESS: 423 E. Two Street #515
CITY: Los Angeles, CA 90012   STATE: CA   ZIP CODE: 90012
TELEPHONE NO.: 424-207-4605   FAX NO.:
E-MAIL ADDRESS: donat.ashford@gmail.com
ATTORNEY FOR (name): In Pro Per

SUPERIOR COURT OF CALIFORNIA, COUNTY OF Stanley Mosk
STREET ADDRESS: 111 N. Hill Street
MAILING ADDRESS:
CITY AND ZIP CODE: Los Angeles, CA 90012
BRANCH NAME: Central

PETITIONER:
RESPONDENT:
OTHER PARENT/PARTY:

| REQUEST FOR ORDER  ☐ CHANGE  ☒ TEMPORARY EMERGENCY ORDERS | CASE NUMBER: |
|---|---|

☐ Child Custody  ☐ Visitation (Parenting Time)  ☐ Spousal or Partner Support
☐ Child Support  ☐ Domestic Violence Order  ☐ Attorney's Fees and Costs
☐ Property Control  ☒ Other (specify): Stay the court order
issued on 10/5/18 pursuant to CCP 1179, 631(g), CCP 657

**NOTICE OF HEARING**

1. TO (name(s)): Aids Healthcare Foundation
   ☒ Petitioner  ☐ Respondent  ☐ Other Parent/Party  ☐ Other (specify):

2. A COURT HEARING WILL BE HELD AS FOLLOWS: 1:30 PM  8.A
   a. Date: ~~10/12/18~~ 8.A   Time: ~~8:30 am~~   Dept.: ~~TBD~~  ☐ Room.:
   b. Address of court  ☒ same as noted above  ☐ other (specify): 91

3. **WARNING to the person served with the Request for Order:** The court may make the requested orders without you if you do not file a *Responsive Declaration to Request for Order* (form FL-320), serve a copy on the other parties at least nine court days before the hearing (unless the court has ordered a shorter period of time), and appear at the hearing. *(See form FL-320-INFO for more information.)*

   *(Forms FL-300-INFO and DV-400-INFO provide information about completing this form.)*

**COURT ORDER**
*(FOR COURT USE ONLY)*

*It is ordered that:*

4. ☐ Time ☐ for service ☐ until the hearing is shortened. Service must be on or before *(date):*

5. ☐ A *Responsive Declaration to Request for Order* (form FL-320) must be served on or before *(date):*

6. ☐ The parties must attend an appointment for child custody mediation or child custody recommending counseling as follows *(specify date, time, and location):*

7. ☐ The orders in *Temporary Emergency (Ex Parte) Orders* (form FL-305) apply to this proceeding and must be personally served with all documents filed with this *Request for Order.*

8. ☐ Other (specify):

Date: _____

JUDICIAL OFFICER

Page 1 of 4

Form Adopted for Mandatory Use
Judicial Council of California
FL-300 [Rev. July 1, 2016]

**REQUEST FOR ORDER**

Family Code, §§ 2045, 2107, 6224,
6226, 6320–6326, 6380–6383;
Government Code, § 26826
Cal. Rules of Court, rule 5.92
www.courts.ca.gov

Exhibit 11H

PETITIONER: Acts Healthcare Foundation
RESPONDENT: Donat Ricketts
OTHER PARENT/PARTY:

FL-300

CASE NUMBER:
18STUD09220

## REQUEST FOR ORDER

**Note:** Place a mark [X] in front of the box that applies to your case or to your request. If you need more space, mark the box for "Attachment." For example, mark "Attachment 2a" to indicate that the list of children's names and birth dates continues on a paper attached to this form. Then, on a sheet of paper, list each attachment number followed by your request. At the top of the paper, write your name, case number, and "FL-300" as a title. (You may use *Attached Declaration* (form MC-031) for this purpose.)

1. [ ] RESTRAINING ORDER INFORMATION
   One or more domestic violence restraining/protective orders are now in effect between *(specify):*
   [ ] Petitioner   [ ] Respondent   [ ] Other Parent/Party   *(Attach a copy of the orders if you have one.)*
   The orders are from the following court or courts *(specify county and state):*
   a. [ ] Criminal: County/state *(specify):*         Case No. *(if known):*
   b. [ ] Family: County/state *(specify):*         Case No. *(if known):*
   c. [ ] Juvenile: County/state *(specify):*         Case No. *(if known):*
   d. [ ] Other: County/state *(specify):*         Case No. *(if known):*

2. [ ] CHILD CUSTODY
   [ ] VISITATION (PARENTING TIME)         [ ] I request temporary emergency orders
   a. I request that the court make orders about the following children *(specify):*

   | Child's Name | Date of Birth | [ ] Legal Custody to *(person who decides: health, education, etc)*: | [ ] Physical Custody to *(person with whom child lives)*: |
   |---|---|---|---|
   | | | | |

   b. [ ] The orders I request for [ ] child custody [ ] visitation (parenting time) are:    [ ] Attachment 2a.
      (1) [ ] Specified in the attached forms:
         [ ] Form FL-305   [ ] Form FL-311   [ ] Form FL-312   [ ] Form FL-341(C)
         [ ] Form FL-341(D)   [ ] Form FL-341(E)   [ ] Other *(specify):*
      (2) [ ] As follows *(specify):*        [ ] Attachment 2b.

   c. The orders that I request are in the best interest of the children because *(specify):*    [ ] Attachment 2c.

   d. [ ] This is a change from the current order for [ ] child custody [ ] visitation (parenting time).
      (1) [ ] The order for legal or physical custody was filed on *(date):*    . The court ordered *(specify):*
      (2) [ ] The visitation (parenting time) order was filed on *(date):*    . The court ordered *(specify):*

   [ ] Attachment 2d.

11/02/18

Exhibit III

FL-300

| PETITIONER: Aids Healthcare Foundation | CASE NUMBER: |
| RESPONDENT: Donat Roberts | 18STU D09220 |
| OTHER PARENT/PARTY: | |

3. ☐ CHILD SUPPORT
   (Note: An earnings assignment may be issued. See *Income Withholding for Support* (form FL-195)

   a. I request that the court order child support as follows:

   Child's name and age          ☐ I request support for each child          Monthly amount ($) requested
                                   based on the child support guideline.      (if not by guideline)

   b. ☐ I want to change a current court order for child support filed on *(date)*:          ☐ Attachment 3a.
      The court ordered child support as follows *(specify)*:

   c. I have completed and filed with this *Request for Order* a current *Income and Expense Declaration* (form FL-150) or I filed
      a current *Financial Statement (Simplified)* (form FL-155) because I meet the requirements to file form FL-155.

   d. The court should make or change the support orders because *(specify)*:          ☐ Attachment 3d.

4. ☐ SPOUSAL OR DOMESTIC PARTNER SUPPORT
   (Note: An *Earnings Assignment Order For Spousal or Partner Support* (form FL-435) may be issued.)

   a. ☐ Amount requested *(monthly)*: $

   b. ☐ I want the court to ☐ change ☐ end   the current support order filed on *(date)*:
      The court ordered $          per month for support.

   c. ☐ This request is to modify (change) spousal or partner support after entry of a judgment.
      I have completed and attached *Spousal or Partner Support Declaration Attachment* (form FL-157) or a declaration
      that addresses the same factors covered in form FL-157.

   d. I have completed and filed a current *Income and Expense Declaration* (form FL-150) in support of my request.

   e. The court should should make, change, or end the support orders because *(specify)*:          ☐ Attachment 4e.

5. ☒ PROPERTY CONTROL ☒                    ☐ I request temporary emergency orders
   a. The ☐ petitioner ☒ respondent ☐ other parent/party be given exclusive temporary use, possession, and
      control of the following property that we ☐ own or are buying ☒ lease or rent *(specify)*:

      CCP 657, CCP 1179 defendant doesn't owe a dime
      See Motion to Summary Judgment and VF-4301

   b. The ☐ petitioner ☐ respondent ☐ other parent/party be ordered to make the following payments on debts
      and liens coming due while the order is in effect:

      Pay to: _____ For: _____ Amount: $ _____ Due date: _____
      Pay to: _____ For: _____ Amount: $ _____ Due date: _____
      Pay to: _____ For: _____ Amount: $ _____ Due date: _____
      Pay to: _____ For: _____ Amount: $ _____ Due date: _____

   c. ☒ This is a change from the current order for property control filed on *(date)*: 10/5/18 See Ex-Parte
                                                                              Motion attached.
   d. Specify in Attachment 5d the reasons why the court should make or change the property control orders.

11/02/18

EXhibit 11J

| | |
|---|---|
| PETITIONER: Aids Healthcare Foundation | FL-300 |
| RESPONDENT: Donat Ricketts | CASE NUMBER: |
| OTHER PARENT/PARTY: | 18STUD08220 |

**6.** ☐ **ATTORNEY'S FEES AND COSTS**

I request attorney's fees and costs, which total (specify amount): $ _____ . I filed the following to support my request:

a. A current Income and Expense Declaration (form FL-150).

b. A Request for Attorney's Fees and Costs Attachment (form FL-319) or a declaration that addresses the factors covered in that form.

c. A Supporting Declaration for Attorney's Fees and Costs Attachment (form FL-158) or a declaration that addresses the factors covered in that form.

**7.** ☐ **DOMESTIC VIOLENCE ORDER**

- Do not use this form to ask for domestic violence restraining orders! Read form DV-505-INFO, How Do I Ask for a Temporary Restraining Order, for forms and information you need to ask for domestic violence restraining orders.
- Read form DV-400-INFO, How to Change or End a Domestic Violence Restraining Order for more information.

a. The Restraining Order After Hearing (form DV-130) was filed on (date):

b. I request that the court ☐ change ☐ end the personal conduct, stay-away, move-out orders, or other protective orders made in Restraining Order After Hearing (form DV-130). (If you want to change the orders, complete 7c.)

c. ☐ I request that the court make the following changes to the restraining orders (specify): ☐ **Attachment 7c.**

d. I want the court to change or end the orders because (specify): ☐ **Attachment 7d.**

**8.** ☒ **OTHER ORDERS REQUESTED** (specify): ☐ **Attachment 8.**

The court has neglected to rule on my motion for Summary Judgement. The order issued on 10/5/18 should be stayed pending a ruling on the Motion for Summary Judgement.

**9.** ☒ **TIME FOR SERVICE / TIME UNTIL HEARING**   I urgently need:

a. ☒ To serve the Request for Order no less than (number): 2 court days before the hearing.

b. ☐ The hearing date and service of the Request for Order to be sooner.

c. I need the order because (specify):

Economically hardship and to stop the landlord from acting on an improper order. CCP (157

**10.** ☒ **FACTS TO SUPPORT** the orders I request are listed below. The facts that I write in support and attach to this request cannot be longer than 10 pages, unless the court gives me permission. ☒ **Attachment 10. Ex-Parte Motion**

Please see defendant's Ex-parte Motion and the Declaration of Donat Ricketts.

I declare under penalty of perjury under the laws of the State of California that the information provided in this form and all attachments is true and correct.

Date: 10/10/18

Donat Ricketts
(TYPE OR PRINT NAME)

► _____ (SIGNATURE OF APPLICANT)

**Requests for Accommodations**

Assistive listening systems, computer-assisted real-time captioning, or sign language interpreter services are available if you ask at least five days before the proceeding. Contact the clerk's office or go to www.courts.ca.gov/forms for Request for Accommodations by Persons With Disabilities and Response (form MC-410). (Civ. Code, § 54.8.)

FL-300 [Rev. July 1, 2016]

**REQUEST FOR ORDER**

Page 4 of 4

11/02/18

Exhibit 11K

1  | DONAT RICKETTS
2  | 423 E. 7TH STREET #515
   | LOS ANGELES, CA 90014
   | DONAT.ASHFORD@GMAIL.COM
3  | (818) 601-3640
   | ***IN PRO PER***

4

### STANLEY MOSK COURTHOUSE

5

6  | AIDS HEALTHCARE FOUNDATION,          CASE NO. 18STUD09220
   | DOES 1 TO 5                          **EX-PARTE APPLICATION**
7  |                          PLAINTIFF   **MOTION TO VACATE & WRIT OF**
   |                                      **PROHIBITION & THE DECLARATION OF**
8  |              vs.                     **DONAT RICKETTS**
   |                                      **[ CCP §1179; CCP §631(g); CCP 657;**
9  | DONAT RICKETTS,                      **Fourteenth Amendment Right to Due Process]**
   |                          DEFENDANT   **Judge: TBD**
10

11

12     ## TO THE PLAINTIFF AND RESPECTED ATTORNEY OF RECORD:

13        **PLEASE TAKE NOTICE,** that an Ex-Parte Application will be heard in Department 91, or the

14     designated department on ~~Friday~~, October ~~12~~, 2018. This Ex-Parte Application is brought pursuant to

15     Rule 60(b)(1), (3) and (6). Relief from a Judgment or Order, FRCP, Rule 103(b). Rulings on Evidence,

16     FRCP., and 18 U.S. Code §1708 - Theft or receipt of stolen mail matter gen-erally. (See Exhibit C2.)

17     The court must exercise its legal discretion[1] and vacate the final judgement issued on October 5th, 2018

18     according to defendant's Fourteenth Amendment Right to Due Process pursuant to CCP §1179, CCP

19     §631(g) and, CCP §657.

20     _____

21     [1] "The discretion of a trial judge is not a whimsical, uncontrolled power, but a **legal discretion**, which

22     is subject to the limitations of legal principles governing the subject of its action, and to reversal on

23     appeal where *no reasonable basis* for the action is shown. [Citation.]' (6 Witkin (2d ed. 1971) Appeal, §

24     244, p. 4235 . . .)" (*Westside Community for Independent Living v. Obledo*, (1983) 33 Cal.3d 348, 355.)

25     When the court misunderstands the facts or there is insufficient evidence to support the facts it relied on

26     the judgment will reversed. (See, e.g., *People v. Cortez* (1971) 6 Cal.3d 78, 85-86; *People v. Chuff*,

27     (2001) 87 Cal.App.4th 991, 998.) In this case, the landlord obtained a favorable judgement because

28     defendant didn't receive a hearing notice from the court. (See CC 1941.1(9).)

---

**Rule 60(b)(1), (3) and (6). Relief from a Judgment or Order, FRCP, Rule 103(b). Rulings on
Evidence, FRCP. & 18 U.S. Code § 1708 - Theft or receipt of stolen mail matter gen-erally.**

Exhibit 11L

**PLEASE TAKE NOTICE,** that defendant filed a Motion for Summary Judgement around September 2nd, 2018, it was underlined_unopposed and scheduled for hearing on October 9th, 2018. Defendant and the Plaintiff's attorney of record was present in court. The judge did not call the case; thus, violating defendant's constitutional rights to due process. (Also see Judicial Canon (A) Adjudicative Responsibilities.) Defendant reserves the right to petition the reviewing court pursuant a Writ of Prohibition if this court abuses it's discretion.

**MEMORANDUM AND POINTS OF AUTHORITY**

**I.      STATEMENT OF FACTS**

Defendant became a tenant at the Madison Hotel on March 15th, 2018. The day before moving in, defendant was promised a stove and fridge. After being advised that the he would not be getting the appliances due to electrical problems, the defendant began to consult with other tenants and discovered that mold was growing inside the bathroom.

In May 2018, defendant filed an unlimited civil complaint against the Plaintiff and it's alias to enforce his constitutional rights and because the landlord had induced him into a contractual agreement based on a false promise and because the landlord did not disclose that the building was and still is infested with mold, roaches and bed bugs. After new management took over the property, they too promised defendant they they'd provide the lawfully required appliances, so defendant moved to dismiss his unlimited civil claim without prejudice.

Around August 25th, 2018 Plaintiff filed an unlawful detainer action in retaliation against the defendant for helping other tenants, and for exercising his constitutional rights. Therefore, defendant responded with a Motion for Summary Judgement and a request that the trial be heard by jury in case the judge denied the Motion for Summary Judgement.

Apparently, there was a "push-over" hearing, defendant was not made aware of the hearing. Any reasonable judge can check the court's system and defendant's filing in this case to draw inferences that any reasonable person would believe defendant would have attended the hearing on October 5th, 2018 had he been notified. The proof of service for such hearing is either 1. Defective by clerical error, or 2. The landlord has continuously tampered with all tenant's mail. Receiving and the distribution of mail is solely in control of the landlord without tenant's consent, we do not know who, what and when we will receive mail unless there's a proof of tracking.

2

**Rule 60(b)(1), (3) and (6). Relief from a Judgment or Order, FRCP, Rule 103(b). Rulings on Evidence, FRCP. & 18 U.S. Code § 1708 - Theft or receipt of stolen mail matter gen-erally.**

Exhibit 11M

## II.    THE COURT'S "PUSH-OVER" HEARING

Once defendant received the unlawful detainer complaint he quickly filed a Motion for Summary Judgement. No reasonable person will believe defendant missed his court date on purpose, or that he received the court's notice of a hearing if the landlord's party is in sole control of receiving and the distribution mail. The court must weigh all evidence in a civil procedure based on a preponderance of evidence during a fair hearing pursuant to Evid. Code §115.

Pursuant to CC §1941.1(9) A dwelling is untenantable if it has no locking mail receptacle for each residential unit in a residential hotel, as required by Section 17958.3 of the Health and Safety Code. This subdivision became operative on July 1, 2008. Also, pursuant to Rule 103(b). Rulings on Evidence, FRCP. and 18 U.S. Code § 1708 - Theft or receipt of stolen mail matter gen-erally the landlord can be held liable for tampering with tenant's mail. (See Exhibit C2.)

If given proper notice of a Trial by Jury, the defendant can and will subpoena more than ten tenants who can testify that the landlord's agents would often misplace, or provide tenants with the wrong mail. Whatever proof of service the court, and or the landlord sent is defective as the Plaintiff's at fault for not providing defendant a secure mailbox. (See also Code Civ. Proc., § 657(1) ["After a trail, the verdict may be vacated by irregularity in the proceedings of the court, jury or adverse party, or any order of the court or abuse of discretion by which either party was prevented from having a fair trial"].)

## III.    THE EFFECTS OF FILLING A MOTION FOR SUMMARY JUDGEMENT

The filing of a Motion for Summary Judgement lets the court know that the defendant has no genuine issue of material fact, and the **moving party is entitled to judgement as a matter of law**. The beauty and efficiency of summary judgment lies in its flexibility of timing. (See Edward Brunet, *The Timing of Summary Judgment*, 198 F.R.D. 679, 680 (2001).) When a party files a motion for Summary Judgment the prototypical **passive judge is awakened** and thrown into heavy action by the filing of a Rule 56 motion. This characteristic requires the engagement of the assigned trial judge and, in so doing, introduces an entity, the trial judge, who is **capable of efficient judicial action**. See generally, *Marvin E. Frankel. The Search for Truth: An Umpireal View.* 123 U. PA. L. REV. 1031. 1035 (1975) (setting forth a model judge as a passive individual unwilling to take charge of the case). Therefore, the judge's

---

3

**Rule 60(b)(1), (3) and (6). Relief from a Judgment or Order, FRCP, Rule 103(b). Rulings on Evidence, FRCP. & 18 U.S. Code § 1708 - Theft or receipt of stolen mail matter gen-erally.**

Exhibit 11N

decision not to *reasonably inquire* into such matters and grant a "push-over" is clearly an abuse of discretion. In other words, the court nor the jury can legally rule in favor of the non-moving party.

## IV.   RETAILIATION AGAINST A TENANT AFTER ENGAGING IN PROTECTED ACTIVITIES. (Anti-SLAPP)

Pursuant to all material facts[2] found within defendant's Motion for Summary Judgment and CC §1942.5 the landlord may not evict a tenant who's engaged in legally protected activities for the next 180 days. (An inference of retaliation may reasonably be drawn by circumstantial evidence, such as a quick response to the tenant's protected acts, and statements of intent to make a tenant's life "difficult" due to a tenant's protected acts) see *Rich v. Schwab*, 162 Cal. App. 3d 739 - Cal: Court of Appeal, 4th Appellate Dist., 1st Div. 1984. Furthermore, according to VF-4301. Termination Due to Failure to Pay Rent – Affirmation Defense – Breach of Implied Warranty of Habitability (questions five and six) a tenant who withholds rent for unhabitual conditions can't be held liable for a breach of contract, back rent and the contract should not be voided by the court on an improperly granted "push-over" order.

## V.   CONCLUSION

For all the reasons stated above, it's proven by clear and convincing evidence that the defendant did not receive notice of such hearing on October 5[th], 2018. The court also abused its discretion to grant a "push-over" hearing and issue a final judgement that infringes on defendant's constitutional rights to due process one court day before it was scheduled to rule on defendant's Motion for Summary Judgement. Furthermore, the denial of a Motion for Summary Judgement is followed by a jury trial.

Because defendant was not afforded a trial, or his right to be heard, if the landlord is issued a Writ to Possession it will be issued by the clerk (not judge), the performance of a lockout is considered a "non-communicative action" only protected by a showing absent of malice. Therefore, a landlord who wrongly acts under false colors of law may also be liable for forcible entry. In *Bedi v McMullan*, (1984) 160 CA3d 272, the landlord obtained an unlawful detainer judgment and a writ of execution for possession. That judgment was then set aside. Without telling the marshal of this fact, the landlord had

---

[2] "A material fact has been defined adequately and simply as a fact which will make a difference in the result of the case." *Buell Industries, Inc. v. Greater New York Mutual Ins. Co.*, 259 Conn. 527, 556, 791 A.2d 489 (2002).

**Rule 60(b)(1), (3) and (6). Relief from a Judgment or Order, FRCP, Rule 103(b). Rulings on Evidence, FRCP. & 18 U.S. Code § 1708 - Theft or receipt of stolen mail matter gen-erally.**

Exhibit    110

the marshal execute the writ by evicting the tenant. These allegations stated a cause of action for forcible entry. See also *Munoz v MacMillan*, (2011) 195 CA4th 648 (landlord may be liable for breach of contract even after eviction under a valid writ of possession).

If a tenant defends an unlawful detainer action by claiming that the landlord sought to evict for a retaliatory motive or other unlawful motive, a verdict for the landlord establishes the landlord's good faith only until the entry of judgment. It does not determine the landlord's motive after judgment in executing the writ of possession. A tenant may bring an independent action against the landlord for both actual and punitive damages for retaliatory eviction, damages may include fraud, malice and oppression [see CC §1942.5(h), (i); *Aweeka v. Bonds*, (1971) 20 CA3d 278, 281–282, 97 CR 650].

## VI.   RECOMMENDATION

Base of the facts and law stated above it is hereby recommended that:

1. The Final Judgement issued on October 5th, 2018 be stayed pursuant to CCP ~~3918(a)~~ and theat the landlord shall have no rights to act under false colors of law as such judgement violates defendant's constitutional right to due process and can lead to economical hardship. (See Rule 60(b)(1), (3) and (6). Relief from a Judgment or Order, FRCP.)

2. The landlord should be court ordered to comply with the law, the defendant should be provided with lawful appliances and all tenants should be in full control of their own mailbox. (See CC §1941.1(9).)

3. The court must make a ruling on defendant's Motion for Summary Judgement. (See CCP §1170.7.)

4. If the court should deny defendant's Motion for Summary Judgment a trial by jury should follow no less than 10 days afterwards.

*I declare under the penalty of perjury in the United States of America, and the State of California that the forgoing is TRUE, correct and to the BEST of my acknowledgement.*

Date: 10/09/2018

_____
DONAT RICKETTS Defendant, *In Pro Per*

5

**Rule 60(b)(1), (3) and (6). Relief from a Judgment or Order, FRCP, Rule 103(b). Rulings on Evidence, FRCP. & 18 U.S. Code § 1708 - Theft or receipt of stolen mail matter gen-erally.**

Exhibit 11P

### RULE 47(d) DECLARATION IN SUPPORT OF DEFENDANT'S EX-PARTE MOTION

I, **DONAT RICKETTS**, declare and state as follows:

1. I am a self-represented litigant.

2. I did not receive the clerk's notice of a hearing scheduled for October 5th, 2018. Had I received it Jury Instructions and a witness list would've been submitted to this court and the Plaintiff's attorney of record. (See CC 1941.1(9) [18 U.S. Code §1708].)

3. I appeared in court on October 9th, 2018 and stayed in Department 91 until 4:30AM. My Motion for Summary Judgement was on calendar, but the judge didn't allow me an opportunity to be heard; therefore, the Motion for Summary Judgement is still pending.

4. It will be an unconstitutional prejudice to deny this motion. Defendant has not been properly heard in this matter and such judgement issued infringes on my constitutional rights, and violates Federal Law. (See CCP §657.)

5. This motion is made in good faith for the reasons set forth throughout my Motion for Summary Judgement and not for the purposes of delay.

6. This Motion for Ex-Parte is supported by a Motion for Summary Judgement.

7. The court would excessively abuse its discretion by not granting a Motion to Stay for economically hardship pursuant to CCP §1179.

8. For all the reasons listed above and in pleading, good cause exists to Pro-temporary challenge the presiding judge, and or any judge who doesn't read this petitioner in its entirety shall recuse themselves from this case pursuant to CCP §170.3(c)(1).

*I declare under the penalty of perjury in the United States of America, and the State of California that the forgoing is TRUE, correct and to the BEST of my acknowledgement.*

Date: 10/09/2018

_____
DONAT RICKETTS Appellant, *In Pro Per*

6

**Rule 60(b)(1), (3) and (6). Relief from a Judgment or Order, FRCP, Rule 103(b). Rulings on Evidence, FRCP. & 18 U.S. Code § 1708 - Theft or receipt of stolen mail matter gen-erally.**

Exhibit 11Q

## RULE 47(d) DECLARATION OF ROBERT THOMAS AKA APOLLO SADEEK

I, **ROBERT THOMAS,** declare and state as follows:

1.  I live at the Madison Hotel, my address is 423 E. 7th street #514 Los Angeles, CA 90014. I am a contracted tenant with Aids Healthcare Foundation.

2.  AT 8:30AM on 10/12/2018 I appeared in Department 91 of the Stanley Mosk Courthouse to testify as a material witness on behalf of Donat Ricketts. The bailiff informed us that Ex-Parte applications are heard at 1:30PM, I cannot attend court this afternoon, and therefore, this declaration is my sworn testimony.

3.  For six months, since living at the Madison I have been bitten by bedbugs, the building has fungus and mold growing out walls and in the showers we all share.

4.  Tenant mailboxes are not secured, nor do we have access to them. The staff is in complete control of receiving and distributing mail to all tenants.

5.  On several occasions management has lost my mail, checks and I've received other tenant's mail on multiple occasions.

*I declare under the penalty of perjury in the United States of America, and the State of California that the foregoing is true, correct and to the best of my acknowledgement.*

DATE: 10/12/18

ROBERT THOMAS, AKA APOLLO SADEEK

## RULE 47(d) DECLARATION OF ROBERT THOMAS AKA APOLLO SADEEK